Louis G. SHERMAN, Jr., and Randolph W. Commins, Executors of the Estate of Louis G. Sherman, Sr., under the Last Will and Testament of Louis G. Sherman, Sr.

v.

UNITED STATES of America.

Civ. A. No. 13890.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 8, 1971.

---

Haas, Holland, Freeman, Levison & Gibert, Atlanta, Ga., for plaintiffs.

John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., D. Wendell Barnett, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## ORDER

### STATEMENT OF THE CASE

O'KELLEY, District Judge.

This Order arises from a trial on the merits of the deductibility, under federal estate tax laws, of a claim against the Estate of Louis G. Sherman for alimony and support payments.

Plaintiffs are the executors of the estate of Louis G. Sherman. This is a suit for refund of estate taxes which the plaintiffs contend were erroneously assessed and collected from them. Most of the facts are stipulated.

The dispute between the parties relates to a single item, a claimed deduction of $129,040.23. This represented the commuted value of an obligation of the Estate to pay $1,500.00 per month to the widow of the deceased for her life (or until her remarriage). The computation of commuted value was made by the Internal Revenue Service and agreed to by plaintiffs in connection with the Service's examination of the Estate Tax Return.

Mr. and Mrs. Sherman were separated in 1962, just over two years prior to Mr. Sherman's death. In connection with their separation, they negotiated and entered into a separation agreement in which Mr. Sherman agreed to pay his wife the $1,500.00 per month for her life or until her remarriage. The agreement specifically provided that it was intended to bind his estate and it provided for the creation of a testamentary trust so as to provide a fund from which the payments would be made in the event he predeceased her.

Prior to their separation in 1962, the decedent had created an irrevocable inter vivos trust for the benefit of his wife and the lineal descendants of him and his wife. This was established on October 17, 1959. The trust indenture gives the trustees the power to either accumulate or distribute all or any part of the net income of the trust to his wife or to the lineal descendants.

The Government contends that the actual amount of money that is to be paid to his wife by decedent's estate pursuant to the separation agreement is uncertain since it depends upon the amount of distributions to her from the inter vivos trust. The separation agreement provides that the testamentary trust will make up the difference, if any, between the amount distributed to her monthly

from the inter vivos trust and $1,500.00 per month.

However, under the stipulation between the parties, this argument would be of no effect, as will be seen further, because it was agreed that the adequacy of consideration was the only question presented.

On July 8, 1971, the parties filed a proposed consent pretrial order which was declared by the Order of this Court on July 9 to be the Pretrial Order of the Court. That Order included as Exhibit A a Stipulation in which it was agreed in Paragraph 7 that the decedent was making payments to Mrs. Sherman of $1,500.00 per month pursuant to the separation agreement and in which it was further agreed under Paragraph 8 that:

"At and after the death of the decedent his *estate was obligated* to continue the said payments to his widow until her death or remarriage." [Emphasis added.]

A motion by defendant for leave to amend the Pretrial Order by inserting the name of an additional witness was granted by the Court on September 24.

At the time of trial, defendant moved to amend the Pretrial Order to reflect an additional issue as to the construction of the separation agreement. Because it was untimely, the Court denied the motion.

The Internal Revenue Code provides as follows:

"Section 2051: For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the gross estate the exemption and deductions provided for in this part."

"Section 2053(a) General Rule—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

*    *    *    *    *    *

(3) for claims against the estate,

*    *    *    *    *    *

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered."

The jurisdiction in which the estate is being administered is Georgia. Under the law of Georgia the obligation created by the separation agreement makes a valid (allowable) claim against the estate. See Donaldson v. Baldwin, 224 Ga. 680, 164 S.E.2d 141 (1968), and discussion, *infra*. Paragraph 11 of the stipulation entered into by the parties provides as follows:

"The only issue between the parties is whether the obligation described in Paragraphs 7 and 8 [the $1,500.00 per month] were supported by adequate consideration."

The reference to "consideration" is a reference to section 2053(c) (1), which provides in part as follows:

"Section 2053(c) (1) Limitations applicable to subsections (a) and (b).— (A) Consideration for claims.—The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth. . . ."

Under the Code, then, the $129,040.23 deduction claimed by the plaintiffs is allowable only to the extent that it was "contracted bona fide and for an adequate and full consideration in money or money's worth."

Mr. and Mrs. Sherman were estranged from each other. They wanted to live separately, although Mrs. Sherman preferred that there not be a divorce. Each employed an attorney. Bona fide and arms length negotiations took place and resulted in the separation agreement with its provision for separate maintenance payments for the wife.

The Internal Revenue Code does not directly address the subject of relin-

quishment of the right to sue for support as consideration for an obligation to pay. The Code does provide:

"Section 2053(e) Marital Rights.—For provisions that relinquishment of marital rights shall not be deemed a consideration 'in money or money's worth,' see section 2043(b)."

"Section 2043(b) Marital Rights Not Treated as Consideration.—For purposes of this chapter a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.'"

The Government argues that it can prevail to the extent that the consideration given by Mrs. Sherman was wholly or in part relinquishment of her "marital rights" in the estate of Mr. Sherman. The plaintiffs contend that she relinquished, instead, her right to sue him for support.

The separation agreement provided that the parties would live separate and apart from each other. It made provision for the home (to the wife) and certain other property, and provided:

"5.

Husband agrees to pay to the Wife for her maintenance and support on the 1st day of each month effective as of the 1st day of August, 1962, the sum of One Thousand Five Hundred $1,500.00) and 00/100 Dollars, which monthly payments shall cease upon the death of the Wife or upon her remarriage, such amount to be paid and received by the Wife as alimony and for her maintenance and support."

Paragraph 10 of the agreement provided that, in the event either party sought a divorce, then the agreement would be incorporated in any decree and it would be

"in full settlement and satisfaction of any and all other claims and rights whatsoever, including, but not by way of limitation, dower, year's support, and all rights under the laws of testacy and intestacy which Wife has or may have against the Husband by reason of their relationship as husband and wife."

No divorce was ever sought by either the husband or the wife.

At the time of the separation, Mr. Sherman was 69 years old, Mrs. Sherman 70. He was in good health, an active man. Her health was not as good. There was no particular reason to suppose that he would be the first to die. His death on November 21, 1964, was the result of a heart attack on the golf course. He did not have a history of heart disease or attacks.

At the time of the separation, Mr. and Mrs. Sherman had been married about 45 years. Neither had been married before. There were three children, all grown and self-supporting, and there were grandchildren.

The assets of the parties were essentially all in the husband's name. At the time of the separation he was worth approximately $400,000.00. This included the home which was transferred to the wife in the separation with a value of about $50,000.00, personal effects, and business and investment assets. There was no other interest in real estate, but Mr. Sherman owned 80 percent of a partnership which owned real estate. His interest in the partnership was worth $31,800.00. His gross income in 1962 (the year of the separation) was $50,958.61. The assets of the parties were accumulated during coverture; neither brought a substantial separate estate into the marriage at any time. Mrs. Sherman had no separate earning capacity.

The standard of living of the parties included periodic trips to Europe, membership in a country club, several mink coats for Mrs. Sherman, one Cadillac and a less expensive car, real jewelry, original paintings that cost a few thousand dollars each.

## ISSUES PRESENTED

The basic question for the Court's determination is whether the commuted sum in controversy (stipulated *arguendo*), as agreed to upon a monthly basis in the separation agreement, was a relinquishment by the wife of her marital support rights or of her marital property (estate) rights.

Stated otherwise, were the monthly payments in satisfaction of her property rights in decedent's estate or to provide for her support and maintenance?

## DISCUSSION

The Government contends that there was no consideration running to the estate on its obligation to pay decedent's wife $1,500.00 monthly because any right that Mrs. Sherman had for support and maintenance against her husband was extinguished upon his death.

Plaintiffs contend that the wife's relinquishment of her right to support and maintenance by the decedent was consideration as contemplated under (and argued against by defendant) Section 2053 of the Internal Revenue Code (26 U.S.C. § 2053).

In this regard, relinquishment of marital rights are not deemed a consideration "in money or money's worth," § 2053(e) and § 2043(b), so as to constitute a deduction, although § 2053(c) (1) allows a deduction in the case of claims against the estate of any indebtedness . . . "contracted bona fide and for an adequate and full consideration in money or money's worth. . . ."

Rev.Rul. 68–379, I.R.B. 1968–29 held in part:

"The regulations make no reference to support rights. Consequently, since support rights are distinguishable from inheritance rights, a surrender of support rights is not a surrender of 'other marital rights,' as that phrase is used in the regulations. A release of support rights by a wife constitutes a consideration in money or money's worth."

See also C. I. R. v. Estate of Nelson (2 Cir. 1968), 396 F.2d 519 at 522, n. 2:

"Section 2043(b) states that a relinquishment of marital rights in decedent's estate shall not be consideration in money or money's worth. However, it is conceded that the relinquishment of support rights may qualify as such consideration."

The Government's next argument centers on the effect of Sherman's death as to his obligation to support Mrs. Sherman under the separation agreement. The Government contends that the duty of support was terminated by his death notwithstanding his agreement to support Mrs. Sherman until her remarriage or death.

The agreement expresses the intent ". . . to bind the Husband or his estate to provide the Wife with income of ONE THOUSAND FIVE HUNDRED ($1,500.00) AND 00/100 DOLLARS per month during her lifetime or until her remarriage, whichever event occurs first . . ." (Par. 7, Page 5 of Agreement).

Under Georgia law a wife is entitled to be supported by her husband. She can bring an action for alimony without a prayer for divorce or she may be entitled to alimony in connection with a divorce. Georgia Code Ann. § 30–210.

The intent of the parties to the agreement is obvious. The law of Georgia, by which the agreement is controlled, provides that an agreement to support the spouse beyond the husband's death is enforceable. The Court in Donaldson v. Baldwin, 224 Ga. 680, 682, 164 S.E.2d 141, 143 (1968) stated:

". . . The general rule is that contracts for the payment of alimony should be given full force and effect and continue for the period provided by the contract which may be beyond the death of the husband. Ramsay v. Sims, 209 Ga. 228, 237, 71 S.E.2d 639. . . ."

In addition, the Tax Court has held that such an agreement is enforceable when the obligation is part of an overall

settlement. Edward B. McLean, 11 T.C. 543 (1948). See also Estate Tax Ruling 19, 1946–2 Cum.Bull. 166.

■ The Court is of the opinion that the separation agreement shows the intent of the parties to be to resolve this question by agreement. It further shows that the consideration for the husband's obligation to pay $1,500.00 per month was the relinquishment by the wife of her right to bring an action for support.

Thus, the Court finds that there was consideration for the agreement because it was a relinquishment by the wife of her support rights and not of her property or estate rights as contended by the Government. The Estate is entitled to deduct the sum of $129,040.23 from the Estate as a valid claim against it.

The Court finds that the Estate is entitled to recover from the defendant in the amount of $48,798.08, plus interest, according to law, from June 17, 1969.

It is so ordered this 8 day of December, 1971.