ESTATE OF MICHAEL ELLMAN, DECEASED, HAROLD ELLMAN AND MARJORIE ELLMAN WEINSTEIN, COEXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7758–70.    Filed December 5, 1972.

*Karl W. Windhorst,* for the petitioner.
*Edward P. Phillips,* for the respondent.

### OPINION

DAWSON, *Judge:* Respondent determined a deficiency of $9,320.01 in the petitioner's Federal estate tax. Petitioner has claimed an overpayment of $1,050. Counsel fees and miscellaneous expenses incurred in this proceeding will be determined in connection with the Rule 50 computation.

The only issue presented for decision is whether the amount of $34,581.71 claimed as the decedent's personal debt obligation to his surviving spouse under a prenuptial agreement qualifies as a claim deductible from the decedent's gross estate under section 2053, I.R.S. 1954. [1]

All of the facts are stipulated and are found accordingly. The pertinent facts are set forth below.

Michael Ellman, a citizen of the United States and a resident of Atlanta, Ga., died May 11, 1967. Harold Ellman was appointed coexecutor and Marjorie Ellman Weinstein was appointed coexecutrix on June 25, 1967. A Federal estate tax return (Form 706) was filed with the district director of internal revenue at Atlanta, Ga. The legal residence of the coexecutor and the coexecutrix on the date the petition was filed in this proceeding was Atlanta, Ga.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Michael Ellman and Mamie Cohen Constangy (later Mamie Cohen Constangy Ellman) entered into a prenuptial agreement dated October 27, 1955. The agreement provided, in part, as follows:

THIS AGREEMENT made and entered into this the 27 day of October, 1955, by and between MICHAEL ELLMAN, now residing in Atlanta, Fulton County, Georgia, hereinafter sometimes referred to as party of the first part, and MRS. MAMIE COHEN CONSTANGY, now residing in Atlanta, Fulton County, Georgia, hereinafter sometimes referred to as party of the second part,

WITNESSETH:

WHEREAS, the parties hereto intend to marry and, in contemplation of such event, are desirous of evidencing their understanding with regard to the right of each as surviving spouse, to inherit from the other; and

WHEREAS, the party of the first part has disclosed to the party of the second part his business interests and financial situation, * * *

WHEREAS, the party of the second part has fully informed the party of the first part of her financial situation and the amount and nature of her assets and has likewise informed party of the first part of the nature and extent of her net income;

NOW, THEREFORE, in consideration of the premises it is mutually agreed as follows:

1. If the parties hereto hereafter are married and are living together as husband and wife at the time of the party of the first part's death, the party of the first part by his Last Will and Testament will leave his estate which, after the payment of special bequests, shall have a value of not less than Fifty Thousand Dollars ($50,000.00), in trust, for the benefit of his children or grandchildren, and to make the payments hereafter provided to second party.

2. Party of the second part will receive during widowhood from the trust created by the first party the sum of Five Hundred Dollars ($500.00) per month, which shall be paid first from the income of said trust, and to the extent that income is not available, from the corpus thereof.

3. In consideration of the agreement of first party to provide such payment by the establishment of such trust as aforesaid, second party hereby:

(a) waives, releases and bars herself of all right of dower or other interest in and to any and all real property that the party of the first part now or may hereafter own or acquire and, * * *

(b) waives and releases all and every right of election to take under the Laws of the State of Georgia or any other jurisdiction against any and every Last Will and Testament of the party of the first part whatsoever and waives any right of inheritance, administration or otherwise in the estate of the party of the first part, should he die intestate, including, but not by way of limitation, any and all rights given to the party of the second part under the Laws of the State of Georgia or any other jurisdiction in which the parties might be residing at the time of the death of the first party, including but not limited to any right to year's support, widow's share, or statutory rights to support.

4. The party of the second part shall have, keep and retain the sole ownership, control and enjoyment of, and, during her lifetime, or by Last Will and Testament or by other testamentary dispositions shall have the exclusive right to dispose of any and all property, real, personal or mixed, she now owns or is possessed of, or hereafter may acquire or receive, as her own absolute property, without interference by or from the party of the first part in like manner as if the said con-

templated marriage between the parties had not taken place and the party of the second part had remained unmarried.

5. The party of the first part hereby:

(a) waives, releases and bars himself of all right in and to the property of the party of the second part, real and personal, now owned or which may hereafter be owned or acquired by her, * * *

(b) waives and releases all and every right of election to take under the Laws of the State of Georgia or any other jurisdiction against any and every Last Will and Testament of the party of the second part whatsoever, and waives any right of inheritance, administration or otherwise in the estate of the party of the second part, should she die intestate, including, but not limited to, any right to year's support, widow's share, or statutory rights to support.

6. This Agreement is made in and shall be governed and construed in accordance with the Laws of the State of Georgia.

7. This Agreement shall be and become effective only in the event that the contemplated marriage between the parties hereto shall be solemnized and if for any reason whatsoever such contemplated marriage shall not be solemnized, then, and in such event, this Agreement shall be and become wholly null and void and without force or effect.

Michael Ellman and Mamie Cohen Constangy were married on December 10, 1955. Both of them were then 65 years of age.

Michael Ellman executed his will on October 28, 1955, which provided, in pertinent part, as follows:

### ITEM V

All the rest, residue and remainder of my estate wheresoever situated and of whatsoever nature, I give, bequeath and devise unto my two children, MARJORIE ELLMAN WEINSTEIN and HAROLD ELLMAN, as Trustees, nevertheless upon the following terms and conditions and the following purposes and uses:

(a) My Trustees shall hold, manage, invest and reinvest said property and shall collect the interests, rents, profits and income therefrom and shall pay said income less all lawful taxes and expenses of administration as hereinafter.directed.

(b) If my said wife, Mamie Cohen Constangy, survives me, the Trustees are to pay her from said net income during widowhood the sum of Five Hundred Dollars ($500.00) per month. If the net income from said trust is not sufficient in amount to pay her $500 a month, then I direct my Trustees to encroach upon the principal to make said payment.

(c) After making payment to my wife as above provided, the balance of said net income during the minority of my grandchildren (the children of my children) may be used in the discretion of the Trustees for the support or education of the children of my two children. That portion of said income not distributed under the provisions hereof shall annually revert to and become a part of the principal of the trust estate.

(d) After the death or remarriage of my said wife, or should she predecease me, which event shall first occur, the net income from said trust estate shall during the life of my two children, Harold Ellman and Marjorie Ellman Weinstein, go to their children per stirpes, with a share for the children of a deceased child.

After the death of both my children, said trust shall terminate and the principal and any undistributed income shall go to my two children's children per stirpes with a share for the children of a deceased child.

(e) If all of the children (my grandchildren) of one of my children should die, leaving no living lineal descendants, said share of my estate that would have gone

to said children had they lived shall go to and be distributed per stirpes to the living lineal descendants of my other child as hereinabove provided.

(f) After the death or remarriage of my wife, whichever shall first occur, if, during the life of this trust, the Trustees should determine that the beneficiaries entitled to receive the income therefrom, due to circumstances beyond their control, are in need of additional income, then in that event, they are authorized to encroach upon the corpus to provide for the necessities of life, or to pay any expenses due to emergencies such as accidents or illness. If and when such encroachments are made, said encroachment shall be charged to and against the share of the persons receiving same so that in final distribution of my estate, it will be equally divided between families of my two children.

\*    \*    \*    \*    \*    \*    \*

ITEM VII

The provisions made in this Will for my wife are in lieu of dower and year's support and conform to and comply with a prenuptial agreement entered into by me with my wife on 27 October, 1955.

Michael Ellman executed a codicil to his will on May 30, 1963. The codicil provided that, if Mamie Cohen Constangy Ellman survived Michael Ellman, she would receive $750 a month rather than $500 per month as set forth in his will executed on October 28, 1955.

Michael Ellman personally owned real estate valued at $4,000 on May 11, 1967.

The actuarial value of a $500-per-month lifetime annuity, contingent upon remaining unmarried, to a woman aged 76 years 8 months, is $34,581.71. Mamie Cohen Constangy Ellman was age 76 years 8 months on May 11, 1967, the date of Michael Ellman's death.

Michael Ellman's personal income in the taxable year 1955 amounted to at least $169,842.23.

On Schedule K of the Federal estate tax return the petitioner claimed a deduction in the amount of $34,581.71 as a personal debt of the decedent owed to his spouse under the terms of the prenuptial agreement of October 27, 1955. In his statutory notice of deficiency the respondent disallowed the deduction on the ground it was not an allowable deduction within the meaning of section 2053 of the Code.

Section 2053(a)(3) provides that the value of the taxable estate shall be determined by deducting from the value of the gross estate the amounts for claims against the estate, i.e., its debts. Section 2053(c)(1)(A) places a limitation on the deduction allowed for debts by providing that a debt "founded on a promise or agreement" may be deducted only to the extent that it was "contracted bona fide and for an adequate and full consideration in money or money's worth." The phrase "in money or money's worth" in section 2053(c) is amplified by sections 2053(e) and 2043(b). Section 2053(e) refers to section 2043(b), which provides that the relinquishment or promised

relinquishment of dower or curtesy, or of other marital rights in the decedent's property or estate shall not be considered to any extent a consideration "in money or money's worth."

Petitioner contends that the relinquishment by Mamie, pursuant to the terms of the prenuptial agreement, of her right to support under Georgia law during the administration of Michael's estate constituted adequate and full consideration in money or money's worth, and therefore qualifies as an allowable deduction. It is argued that the widow's support rights during the administration of her husband's estate is not a "marital right" falling within the ambit of the statute. Respondent counters with the contention that such a "consideration" does not, as a matter of Federal law, constitute an adequate and full consideration in money or money's worth within the meaning of sections 2053(c)(1), 2053(e), and 2043(b). Alternatively, respondent asserts that the evidence herein fails to show the value of Mamie's dower and support rights so that a determination can be made of the extent to which Michael gave consideration for their release, and that this is necessary under section 2053 (c)(1)(A).

The parties agree that under Georgia law a widow has a right to support during the administration of her husband's estate. They likewise agree that this right to support is treated as an expense of administration. Ga. Code Ann., sec. 113–1002. However, it is clear that merely because a widow has an enforceable right under State law does not ipso facto make that right a deductible "claim against the estate" for Federal estate tax purposes. *Taft* v. *Commissioner*, 304 U.S. 351 (1938); *United States* v. *Stapf*, 375 U.S. 118 (1963). By the same token, we think a widow's right to support during the administration of her husband's estate is not a deductible claim against the estate under section 2053.

Section 812(b) of the Internal Revenue Code of 1939, the predecessor of section 2043(b), was amended in order to eliminate a certain form of estate-tax avoidance resulting from the contractual conversion of a wife's dower or other marital rights into a deductible debt of the estate. See S. Rept. No. 665, 72d Cong., 1st Sess. (1932), 1939–1 C.B. (Part 2) 532, where the Senate Finance Committee commented as follows:

a decedent dies leaving an estate of $1,500,000 (after payment of all charges), and under the State law the surviving spouse is entitled to one-third or $500,000, of which she cannot be deprived by will without her consent. Under existing law the estate is entitled to no deduction on account of her statutory rights, but, if she and decedent had entered into a contract by which she was to receive from his estate a stated sum in consideration of a waiver of her statutory rights, the amount due her under the contract might be held a deductible claim against the estate as having been contracted for an adequate and full consideration in [money or] money's worth, namely, the value of her waived marital rights.

Congress thus provided that a release by a wife of her dower or other marital rights is not to be treated as consideration in "money or money's worth."

It is our view that the phrase "other marital rights" in section 2043(b) encompasses any support allowance due to a widow under State law during the administration of her husband's estate. Consequently, the release by Mamie of her statutory right to a year's support under Georgia law would not constitute valid consideration in money or money's worth. This view is consistent with the rationale of our recent opinion in *Estate of Isadore Rubin*, 57 T.C. 817 (1972), on appeal (C.A. 3, Apr. 17, 1972), where we said at page 825:

> From petitioner's brief, it appears that its argument concerns a surrender of support rights that Rose Rubin would have had as surviving spouse. The "support rights," the relinquishment of which has been held to constitute consideration in money or money's worth, are the support rights to which a wife is entitled during marriage and which she may relinquish in a settlement agreement incident to a divorce. *Estate of Louis Fabrikant*, 39 T.C. 714. They do not refer to any rights a widow may claim as a result of her husband's death.

The prenuptial agreement in the *Rubin* case, just as the one in this case, did not mention the wife's right to support during the marriage and prior to the husband's death. In footnote 6 of its opinion in *Rubin* this Court commented (although dictum) that a widow may have a statutory right under State law to a support and maintenance allowance during the administration of her husband's estate, but the present value of that right "would not constitute a full and adequate consideration." The parties in this case have divergent views as to meaning of this dictum, each side arguing that it supports its position. We think it fortifies respondent's position in this case.

Petitioner relies heavily on our opinion in *Estate of Robert Rodger Glen*, 45 T.C. 323 (1966), which contains an extensive discussion and examination of section 2043(b). In our judgment the *Glen* case is clearly distinguishable—factually and legally—from the instant case. In sharp contrast to the factual situation in the present case, (1) the obligation of the estate in *Glen* arose out of a divorce in which the husband and wife were adversaries and were both represented by counsel, and (2) the husband transferred his property into the trusts in exchange for the release by the wife of her right to support during their *joint lives*. The specific holding in *Glen* was that section 2043(b) "is not applicable to the relinquishment of a presently enforceable claim to an outright portion of a spouse's property upon divorce." This is plain from what we said in our *Glen* opinion at page 340:

> This view is supported by a careful study of the above-quoted committee report with respect to enactment of the predecessor of section 2043(b). The example used in the report to illustrate the tax avoidance which the section

was designed to curb involves the relinquishment by a wife of her rights, *as surviving spouse*, to one-third of the husband's estate. These rights are referred to as "marital rights"—not as dower or curtesy or any other term. Rather than refer to the surviving spouse's right to one-third of the decedent's estate as "dower," or any other such term, which might have as many legal meanings as there are common law jurisdictions, *the drafters used the phrase "marital rights," a phrase which by virtue of its generality would probably cover all rights in surviving spouses no matter what they are called under any local law.* It is far more reasonable to suppose that the term "marital rights" was used for this purpose rather than used with an unexpressed intention to extend the coverage of 2043(b) beyond the *surviving spouse* situation described in the committee report.

The clear and obvious motive behind enactment of section 2043(b) impels this interpretation. The statute was designed to prevent a person from contracting with his spouse to pay the surviving spouse a certain amount at death in exchange for release of whatever rights the spouse would otherwise have in his estate and thereby convert nondeductible claims into deductible contractual claims against the estate. See *Estate of Myles C. Watson, supra.*

[Emphasis supplied.]

The "right of support" mentioned in *Glen* was "support" during the joint lives of the husband and wife, whereas the "support" during the administration of Michael's estate here relates exclusively to the period after his death. This case, as did *Rubin*, represents a "classic example" of when section 2043(b) is applicable.

A second case on which the petitioner relies is *Sherman* v. *United States*, 334 F. Supp. 1311 (N.D. Ga. 1971), affirmed in part, reversed in part, and remanded with directions 462 F. 2d 577 (C.A. 5, 1972). It is likewise distinguishable. In that case the decedent and his wife were separated in 1962, about 2 years before his death. They entered into a separation agreement which provided, among other things, that the husband pay the wife $1,500 a month as alimony and for maintenance and support, until her remarriage or death. It further provided that if the husband predeceased the wife, the payments were to be continued by his estate. The agreement referred to the husband's previously established irrevocable inter vivos trust under which the trustees had full discretionary power to distribute the principal and income of the trust to the wife or the decedent's lineal descendants, or to accumulate the trust income. The agreement also recited the obligation of the husband to establish in his will a testamentary trust and directed that the trustees be required to distribute each month to the wife, from the income or corpus of the trust, the difference between the amount distributed from the inter vivos trust and $1,500. The District Court held that the estate was entitled to deduct as a debt the commuted value of the obligation to make payments to the decedent's wife under the separation agree-

ment. The Court of Appeals, in affirming the conclusion on this issue, said at pages 578–579:

We cannot say that this finding is clearly erroneous. Under Georgia law the wife's right to support may be satisfied by periodic payments or given to her in a lump sum or by an interest in the husband's property. *Bateman* v. *Bateman*, 1968, 224 Ga. 20, 159 S.E.2d 387; *Harper* v. *Harper*, 1965, 220 Ga. 770, 141 S.E.2d 403. The husband's gross income of over $50,000 in the year of separation, the high standard of living of the husband and wife, the good state of health of both parties in spite of their ages of 69 and 70 years, and the fact that they had been married over 45 years, fully support the district court's finding that the obligation of the estate under the agreement was in consideration of the wife's relinquishment of support rights and not of her property or estate rights.* * *

Similar to the *Glen* case, the husband and wife in *Sherman* were estranged and the support obligation grew out of the separation agreement. In addition, Sherman's monthly payments to his wife began at the time of the separation, and the agreement to make such payments related primarily to the period of Mr. and Mrs. Sherman's joint lives. The provision for continuation of support payments to Mrs. Sherman after her husband's death was only an incidental part of the entire consideration and support obligation. Again we emphasize, by contrast to the *Sherman* situation, that Mamie Ellman's right to support during the administration of Michael's estate was concerned only with the period commencing after his death. It was a "marital right" of the surviving spouse, closely aligned with dower or curtesy, which falls within the scope of section 2043(b). To conclude otherwise on these facts would emasculate section 2043(b). Cf. *Estate of H. B. Hundley*, 52 T.C. 495, 513–514 (1969), affirmed per curiam 435 F.2d 1311 (C.A. 4, 1971).

The "support rights" dealt with in Rev. Rul. 60–160, 1960–1 C.B. 374, and Rev. Rul. 68–379, 1968–2 C.B. 414, are also quite different from the support rights involved in this case. The common denominator in both of the revenue rulings is that the support rights arose out of a divorce or a legal separation and payment to the wife began during the husband's lifetime. In other words, the satisfaction of the wife's right to support did not reduce the husband's estate any more than the satisfaction of any of his other legal obligations. Furthermore, in a situation involving a divorce or legal separation, the parties generally are bargaining at arm's length; payment by one spouse to the other spouse for his or her relinquishment of support rights is not likely to involve complicity between husband and wife to avoid estate tax. By comparison the obligation of Michael to pay Mamie $500 per month (later changed to $750 per month) grew out of a harmonious relationship and not out of a divorce or separation.

Nor do we find Rev. Rul. 71–67, 1971–1 C.B. 271, applicable to the factual situation in the present case. That revenue ruling permits an estate to deduct as a debt the commuted value of support payments to the decedent's wife in certain situations where the payments are based on postponed support rights. An obligation to support a wife after the husband's death was held to be a deductible debt only to the extent that the support payments made to the wife during the joint lives of both were less than the support payments to which the wife actually would have been entitled under State law. In the instant case Mamie did not have any postponed support rights. It is apparent that she was fully supported by Michael during their entire marriage.

In summary, we hold that, regardless of the enforceability under Georgia law of the rights to dower and to a widow's support allowance during the administration of her husband's estate, neither the release of dower nor the release of a widow's support allowance during the period of administration legally constitutes "consideration in money or money's worth" for Federal estate tax purposes. Therefore, the amount of $34,581.71 does not qualify as a claim against Michael's estate which is deductible under section 2053(a)(3).

In view of this conclusion, we do not reach the alternative arguments advanced by the respondent.

*Decision will be entered under Rule 50.*