ESTATE OF CECIL GRAEGIN, DECEASED, MERCANTILE NATIONAL BANK and PAUL K. GRAEGIN, CO-EXECUTORS, petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Graegin v. Commissioner
Docket No. 37230-84.
United States Tax Court
T.C. Memo 1988-477; 1988 Tax Ct. Memo LEXIS 485; 56 T.C.M. (CCH) 387; T.C.M. (RIA) 88477; September 28, 1988. Larry D. Blust and Paula Cozzi Goedert, for the petitioner. Joel D. Arnold and G. Roger Markley, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined a deficiency in Federal estate tax against the Estate of Cecil Graigin, deceased (petitioner), in the amount of $ 696,325.42. After concessions, the issues for decisions are (1) whether a balloon payment of interest due upon maturity of an obligation, which was incurred in order to pay petitioner's Federal estate tax liability, is a deductible administration expense under section 2053(a)(2); *487 [1] and (2) whether the estate may deduct the acturarial value of Helen Tatarek Graegin's (Cecil Graegin's widow) interest in an inter-vivos, revocable trust, which was established by Cecil Graegin and in which he had a retained life interest. FINDINGS OF FACT Some of the facts have been stipulated and are so found. So much of the stipulation of facts as we deem relevant, and exhibits attached thereto, are incorporated herein by this reference. Cecil Graigin died on November 13, 1981, survived by his wife, Helen Tatarek Graegin (Helen). At the time of his death, the decedent was a resident of Dyer, Indiana. Mercantile National Bank (the Bank) and Paul Graegin, (Paul), Cecil's son, were named co-executors of decedent's estate. At the time the petition herein was filed, the Bank maintained its principal place of business in Hammond, Indiana, and Paul resided in Dyer, Indiana. A Federal estate tax return was filed for the decedent's estate with the Internal Revenue Service Center in Memphis, Tennessee on August 17, 1982. [2]
*488 Prior to their contemplated marriage (which occurred on October 9, 1976), Cecil (then being 68 years of age) and Helen (then being 64 years of age) entered into an antenuptial agreement dated October 8, 1976. The agreement incorporated the terms of a revocable trust created by Cecil on September 6, 1976, for the benefit of Helen (Helen's trust). [3]
Both the antenuptial agreement and the trust agreement provide that if Helen survives Cecil as his lawful widow, she would have a life-time right to the continued occupancy of the property used as their marital residence (the marital residence), with the cost of maintenance, taxes, utilities, etc. being paid from the income of the trust. Helen was entitled to receive all trust income remaining after the payment of these expenses. The trust agreement precluded invasion of trust principal unless the trust income was insufficient to cover the cost to maintain the property. Helen's right to occupy the marital residence and to receive the income from the trust terminated upon her death, remarriage, co-habitating with a male, residing in another residence *489 for more than 12 consecutive months or abandoning the marital residence. If Helen failed to survive Cecil, or if any of the aforementioned terminating events occurred, the assets then remaining in Helen's trust poured over to another trust (Cecil's trust) which had been created by Cecil in January, 1976. Paragraph 11 of Helen's trust provided that the benefits payable to Helen were: in complete and total release and in full satisfaction of any and all rights of every kind and nature, statutory and/or otherwise, which, by reason of the marriage, she may acquire or has acquired in the property and/or estate of Cecil and in consideration thereof she does hereby forever waive and does hereby totally relinquish any and all rights of every kind and nature, statutory and/or otherwise, which Helen would acquire or has acquired as the wife, widow, heir at law, next of kin, or distributee of Cecil in his property and/or estate, under the law now or hereafter in effect in any jurisdiction, whether by way or dower, distributive share, right of election to take against any will including the last will of Cecil Graegin, widow's allowance, family allowance, distribution in intestacy, or otherwise. *490 Cecil's estate consisted primarily of nonprobate assets: assets held in Helen's trust, assets held in Cecil's trust and a $ 500,000 term life insurance policy payable to the decedent's son, Paul. The assets held in Helen's trust consisted of municipal bonds and cash ($ 168,417), a mortgage ($ 21,000) and the marital residence and the furnishings contained therein. The assets held in Cecil's trust consisted off 5,130 shares of voting preferred stock of Graegin Industries, Inc., a closely held corporation. The shares were valued for estate tax purposes at $ 110 per share or an aggregate of $ 564,300. [4]
On August 13, 1982, ownership of Graegin Industries, Inc. stock was as follows: Voting
Owner
Preferred
Common
Cecil's Trust
5,130
--
Paul Graegin
36
4,834
1980 Trust F/B/O
Stephen Curtis
[5] 182
170
*491 Stephen Curtis is not related to the Graegin family. Cecil's trust provided that after Cecil's death, and after payment of all expenses of administration, 1,130 shares of voting preferred stock of Graegin Industries would be distributed to Paul and the balance of the trust, 4,000 shares of voting preferred stock of Graegin Industries, would be divided among trusts for Cecil's two grandchildren. Under the terms of Cecil's will, his residuary estate poured over to his trust which was charged with the payment of all claims and expenses of the estate. As of the date of Cecil's death, property subject to claims, within the purview of section 2053(c)(2), totaled $ 667,232. After setting aside amounts to pay estimated administration expenses and Indiana inheritance taxes, approximately $ 20,000 in liquid assets remained available to pay petitioner's Federal estate taxes of $ 204,218, as calculated on the estate tax return Form 706. The executors decided that it would be preferable to borrow $ 204,218 to meet petitioner's Federal estate tax obligation rather than sell the Graegin Industries stock. Graegin Corporation, a wholly owned subsidiary of Graegin Industries, agreed to *492 loan the estate the needed $ 204,218. To evidence such loan, approval for which was sought [6] and obtained from the appropriate Indiana court, the executors of the estate executed a note on August 13, 1982. The note (which was unsecured) bore interest at the rate of 15 percent per annum; [7] principal and interest were due in a single payment on August 13, 1997. Prepayment of both principal and interest was prohibited. The due date of the note was set to coincide with Helen's 15-year life expectancy. The executors used Helen's anticipated longevity as the measuring rod for the length of the note because upon Helen's death, the assets in her trust would be available to satisfy (at least in part) the note obligation. In addition to the assets in Helen's trust, the executors anticipated that Graegin Industries would *493 pay dividends to Cecil's trust over the 15-year period, which also would be available to satisfy the note. In 1984, Graegin Industries paid a dividend to its shareholders; the amounts of dividends paid to Cecil's trust was $ 70,000. In addition to being a co-trustee of both Helen's and Cecil's trusts, as well as a co-executor of the decedent's estate, Paul Graegin was the President of Graegin Industries, Inc. and Graegin Corporation. He was also a member of the Board of Directors of both companies. On its Federal estate tax return, petitioner deducted $ 459,491, the amount of the single interest payment due upon maturity of the note ($ 204,218 x 15% x 15 years), as an administration expense. Further, in reporting the value of Helen's trust as part of the decedent's gross estate, petitioner reduced the value of such trust by $ 140,247 (the actuarial value of Helen's life interest in the trust) on the grounds that the transfer to Helen of a life interest in the trust estate constitued a transfer of property during Cecil's lifetime supported by "adequate consideration in money or money's worth." Respondent disallowed both the claimed interest deduction and the reduction in value *494 with respect to Helen's interest in her trust. OPINION
I. Interest Deduction
Section 2053(a)(2), [8] with an exception not applicable herein, [9] in general authorizes an estate tax deduction for administration expenses which are allowable by the laws of the jurisdiction in which the estate is being administered. *495 Respondent posits that to be deductible the projected interest expense must be actually and necessarily incurred. See section 20.2053-3(a), Estate Tax Regs. He claims that it was not; we disagree. Section 20.2053-3(a), Estate Tax Regs., provides that expenses actually and necessarily incurred are expenses "in the collection of assets, payment of debts, and distribution of property to the persons entitled to it." In Estate of Todd v. Commissioner,57 T.C. 288 (1971), we held that interest incurred for a loan to pay Federal estate taxes and State inheritance taxes was an allowable administration expense. Further, we have held that projected interest payments are deductible for estate tax purposes as administration expenses. Estate of Bahr v. Commissioner,68 T.C. 74 (1977). Cecil's estate lacked liquidity. To avoid a forced sale of its assets, the estate had to borrow money to satisfy its Federal estate tax liability. Expenses incurred to prevent financial loss to an estate resulting from forced sale of its assets in order to pay estate taxes are deductible administration expenses. Estate of Todd v. Commissioner,57 T.C. 288 (1971); *496 Estate of Huntington v. Commissioner,36 B.T.A. 698 (1937). We are thus satisfied that petitioner's interest expense was "actually and necessarily incurred", as required by section 20.2053-3(a), Estate Tax Regs. Respondent contends that the borrowing by the estate from Graegin Corporation was not a true loan. He asserts that repayment of the loan is, at the least, tenuous because the borrower and the lender are controller by Paul Graegin and because the loan is unsecured. [10]
Whether a particular transaction is to be properly characterized as a loan depends on the facts and circumstances. Busch v. Commissioner,728 F.2d 945 (7th Cir. 1984), affg. a Memorandum Opinion of this Court. The existence *497 of a loan is determined by whether repayment was in fact contemplated by the borrower and lender. Tollefsen v. Commissioner,431 F.2d 511 (2d Cir. 1970), affg. 52 T.C. 671 (1969). While we agree with respondent that loans between a debtor and creditor having an identity of interest require close scrutiny, such identity of interest per se is not fatal in characterizing the transaction as a loan. We are mindful of the potential for abuse presented by the facts in this case; however, we found Paul Graegin's testimony regarding his intention with respect to the repayment of the note credible. In addition, presumably the outside shareholder (Stephen Curtis) would complain if the loan is not timely paid. We believe the interest rate was reasonable, even though it was based on the prime rate of interest (a short term obligation interest rate) whereas the loan in question was for a 15-year period. While we are disturbed by the fact that the note requires only a single payment of principal and interest, such a repayment term is not unreasonable given the decedent's post-mortem asset arrangement. Finally, we note that both the Bank and the guardian ad *498 litem for the minor heirs, even though they were not adverse parties, concurred in the decision to borrow from Graegin Corporation and that the local court having jurisdiction over the decedent's estate approved the borrowing. Thus, all matters considered, we believe the loan from Graegin Corporati0n was a genuine indebtedness. Finally, respondent asserts that no interest deduction be allowed because "there is no reasonable certainty that the interest will be paid." See section 20.2053-1(b)(3), Estate Tax Regs. We disagree. Section 20.2053-1(b)(3), Estate Tax Regs., requires both that the amount of the estimated expense be ascertainable with reasonable certainty and that it will be paid. Nothing in life (but death) is certain. Here, the amount of interest on the note is not vague or uncertain but instead is capable of calculation ($ 204,218 x 15% x 15 years = $ 459,491). The promissory note could not be prepaid, either as to principal or interest. As stated, we found credible Paul Graegin's testimony as to his intent to cause the loan to be timely repaid. Accordingly, we conclude that the amount of interest on the note is ascertainable with reasonable certainty, and that *499 it will be paid. Cf. Estate of Bailly v. Commissioner,82 T.C. 246 (1983), supplemental opinion 81 T.C> 949 (1983). In summary, we hold that the entire amount of interest on the note is deductible as an administration expense under section 2053(a)(2).
II. Reduction in Valuing Helen's Trust
Petitioner acknowledges that because Cecil retained a life estate in Helen's trust, the value of the trust is includible in the decedent's gross estate under section 2036. [11] Petitioner contends, however, that the amount to be included in the gross estate with respect to such trust should be reduced by the value of Helen's life estate interest therein, which petitioner claims was transferred to her by the decedent in exchange for full and adequate consideration in money or money's worth in the form of Helen's relinquishment of support rights. [12]
*500 Section 2043(b) provides that for estate tax purposes, relinquishment of dower, curtesy, a statutory estate created in lieu of dower or curtesy, or other marital rights in the decedent's property or estate does not constitute "consideration in money or money's worth." [13]
Contrasted to the release of the marital rights specified in section 2043(b) which does not constitute "consideration in money or money's worth", the release of support rights constitutes "consideration in money or money's worth." See Estate of Ellman v. Commissioner,59 T.C. 367 (1972), and Estate of Rubin v. Commissioner,57 T.C. 817 (1972), affd. without published opinion 478 F.2d 1399 (3d Cir. 1973). Petitioner asserts that under the antenuptial agreement, Helen relinquished *501 her support rights; respondent contends that Helen surrendered only her marital or property rights. We agree with respondent. In comparing support rights with marital or inheritance rights, we stated: The "support rights," the relinquishment of which has been held to constitute consideration in money or money's worth, are the support rights to which a wife is entitled during marriage and which she may relinquish in a settlement agreement incident to a divorce. Estate of Louis Fabrikant,39 T.C. 714. They do not refer to any rights a widow may claim as a result of her husband's death. [Estate of Rubin v. Commissioner,57 T.C. at 825.] Neither the antenuptial agreement nor the trust address Helen's entitlement to support from Cecil, or lack thereof, in the event of a divorce. Rather, the agreements relate to the relinquishment of the right by both Helen and Cecil to share in the property of the other, both during lifetime and upon death. The only provision relating to support provides that the antenuptial agreement "does not attempt to regulate or limit or restrict the amount of support to be provided while the parties are married." Further, *502 under Indiana law, Helen had no right to receive support upon Cecil's death. Hicks v. Fielman,421 N.E.2d 716 (Ind. Ct. App. 1981). Even if we were to find that Helen's interest in her trust was supported by consideration, she has only a conditional life interest which is incapable of valuation. Her life interest in the trust assets is subject to termination in the event of her death, remarriage, co-habitating with a male, residing in another residence for more than 12 consecutive months or abandoning the marital residence. Petitioner must prove entitlement to the reduction sought. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. We know of no method or table (nor has petitioner referred us to any method or table) which values an interest terminable upon a voluntary act (such as co-habitating with a third party male, residing in another residence for more than 12 consecutive months or abandoning a residence). Hence, petitioner has failed to satisfy its burden. Accordingly, either alternatively (1) because Helen's interest in her trust was not transferred to her in full and adequate consideration *503 in money or money's worth or (2) because Helen has a conditional life estate interest incapable of valuation, respondent's disallowance of the reduction for the actuarial value of Helen's life interest in the trust ($ 140,247) is sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect at the time of the decedent's death. ↩
2. Respondent did not question the timeliness of the filing of the return. Thus, we assume that the return was mailed on August 13, 1982, and received by respondent's Memphis Service Center on August 17, 1982. ↩
3. During Cecil's lifetime, the income of Helen's trust was payable to Cecil. ↩
4. In his notice of deficiency, respondent determined the value of the voting preferred stock of Graegin Industries to be greater than the reported $ 110 per share. The parties were able to settle the valuation difference. ↩
5. Pursuant to a Stock Subscription Agreement, dated January 2, 1980, the Trustee of the 1980 Trust for the benefit of Stephen Curtis (Paul Graegin) was obligated to purchase a total of 850 shares of common and 910 shares of voting preferred stock of Graegin Industries over a period of years. As of the date of trial, the Trustee had purchased 455 shares of voting preferred and 425 shares of common stock, resulting in a voting percentage of 8%.↩
6. In connection with obtaining the court's approval of the loan, a guardian ad litem was appointed to represent the interests of the minor heirs. Such guardian acquiesced in the executors' petition to borrow funds from Graegin Corporation. ↩
7. The interest rate was based upon the prime rate of interest published in the August 13, 1982 Wall Street Journal. ↩
8. Section 2053(a)(2) provides, in relevant part, as follows: (a) General Rule. -- For purposes of the tax imposed by Section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts -- (2) for administration expenses, * * * as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered. ↩
9. A deduction is not allowed to the extent the amount of the administration expenses (and other expenses deductible pursuant to section 2953(a)) exceeds the value of property subject to claims at the time of the decedent's death except to the extent such deductions represent amounts paid before the date prescribed for the filing of the estate tax return. Section 2053(c)(2). The value of property in Cecil's estate subject to claims at the date of his death ($ 667,232) exceeded the total amount of the funeral and administration expenses ($ 539,357), including the projected interest expense of $ 459,491 claimed by petitioner on its estate tax return; thus, the limitation contained in section 2053(c)(2) is not herein applicable. ↩
10. Respondent also suggests that because there are no corporate minutes approving a loan to the estate, we should infer that the loan was not negotiated in good faith. We decline to do so. As this Court has previously noted, closely held corporations often act informally with decisions being made by action rather than being recorded in corporate minutes. See Levenson & Klein, Inc. v. Commissioner,67 T.C. 694, 714↩ (1977). 11. Section 2036(a) provides as follows: (a) GENERAL RULE. -- The value of the gross estate shall include the value of all property to the extent of any interest therein on which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death -- (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom. ↩
12. The value of the trust is also includible in the decedent's gross estate under section 2038. Section 2038, like section 2036, allows a diminution in the amount to be included in the decedent's gross estate in the case of "a bona fide sale for an adequate and full consideration in money or money's worth." Thus, the resolution of the amount to be included in the decedent's gross estate is the same under both section 2038 and section 2036. ↩
13. Section 2043(b) provides as follows: (b) MARITAL RIGHTS NOT TREATED AS CONSIDERATION. -- (1) IN GENERAL. -- For purposes of this chapter, a relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth." ↩