ESTATE OF ERNST ZOBEL, DECEASED, FREDERICK C. ZOBEL, ADMINIS-
TRATOR WITH THE WILL ANNEXED, PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60015. Filed July 26, 1957.

*William J. Parks, Esq.*, for the petitioner.
*Henry L. Glenn, Esq.*, for the respondent.

OPINION.

MULRONEY, *Judge:* Respondent determined deficiencies in income
tax of the Estate of Ernst Zobel as follows:

| Year | Deficiency |
|------|------------|
| 1948 | $1, 824. 48 |
| 1951 | 854. 88 |
| 1952 | 949. 05 |

The respondent, in his notice of deficiency, determined a deficiency
for 1948 in the amount of $1,824.48, but the parties stipulated for a
conditional increased deficiency making the total deficiency for the
year 1948, $2,520.56. The petitioner, in the stipulation, consented
to the entry of a decision by this Court for the increased deficiency
without the necessity of an amendment of respondent's answer. Such
consent was conditioned upon a decision of this Court sustaining the
respondent's determination that the amounts specified in the deficiency
notice constitute income to the Estate of Ernst Zobel.

The only questions are (1) whether certain payments received by
petitioner estate, in settlement of an obligation due the estate, which
obligation had been given a zero value at the time of decedent's death,
constitute taxable income and (2) if so, were the moneys so received
by petitioner estate taxable as ordinary income or at the capital gain
rate?

All the facts are stipulated and are found accordingly.

Ernst Zobel died testate on April 3, 1933, a resident of Brooklyn,
New York. The executors named in the will died and prior to 1948
Frederick C. Zobel was appointed, and at the date of this hearing was

still serving, in the capacity of administrator with the will annexed of the Estate of Ernst Zobel, the petitioner.

The present administrator, on behalf of the petitioner, filed cash basis Federal income tax returns for 1948 and 1951 with the then collector of internal revenue, and for the year 1952 with the district director of internal revenue, at Newark, New Jersey.

At the time of the death of Ernst Zobel, his son, Hans E. Zobel, was indebted to him in the sum of $50,041.35. On the Federal estate tax return for the Estate of Ernst Zobel it was reported that this debt had "No Value," and the respondent accepted the zero valuation in appraising the value of the debt for estate tax purposes. The market value of the debt as of the date of death of Ernst was, in fact, zero.

The indebtedness of $50,041.35 due from Hans to Ernst at the death of Ernst was not deducted as a bad debt in any income tax returns filed by Ernst, nor in any such returns filed on behalf of Ernst after his death.

After the death of Hans Zobel in 1947, the estate of Ernst filed a claim against the estate of Hans for the unpaid balance of the debt which had been reduced somewhat by small payments made on account from time to time. On April 27, 1948, a settlement agreement was entered into between the representatives of the two estates. Under this agreement, the estate of Hans agreed to pay the estate of Ernst, in full satisfaction and discharge of the debt arising out of the indebtedness of Hans to Ernst, the sum of $18,000, payable $9,000 on the execution of the agreement and the remaining $9,000 on January 10, 1949.

It was also agreed that the estate of Hans would release the estate of Ernst from any claim to any part of the $18,000 to be paid to the estate of Ernst, based upon the right of the estate of Hans to a one-eighth share of the estate of Ernst under the will of Ernst.

In accordance with the settlement agreement, the estate of Hans paid to the estate of Ernst, $9,000 on April 27, 1948. The remaining $9,000 was paid in two installments: $4,500 on December 27, 1951, and $4,500 on January 15, 1952.

The income tax returns which were filed on behalf of the estate of Ernst for the years involved did not include as income any part of the above payments made in 1948, 1951, and 1952. The respondent determined, and contends, that all of the payments received from the estate of Hans in such years constituted ordinary income to the estate of Ernst and accordingly determined deficiencies in income taxes.

Section 161 of the 1939 Internal Revenue Code provides that "[t]he taxes imposed by this chapter * * * upon individuals shall apply to the income of estates * * * ." The estate is a separate and different

taxpayer from the decedent. *Hartley* v. *Commissioner*, 295 U. S. 216; *Helvering* v. *Roth*, 115 F. 2d 239; *Herbert's Estate* v. *Commissioner*, 139 F. 2d 756, affirming a Memorandum Opinion of this Court, certiorari denied 322 U. S. 752.

Respondent's position is that the sums received by the estate fall within the definition of gross income in section 22 (a) of the 1939 Internal Revenue Code and they are not specifically excluded by any other provision of the Code. Section 22 (a) of the 1939 Code defines gross income to include "gains * * * of whatever kind * * * ." Clearly the sums received are to be included in gross income under the above statute and the only question is whether there is some provision excluding such sums. In *Helvering* v. *Roth, supra*, certain notes in decedent's estate were appraised as worthless at the time he died. The notes were later paid and the court held (Judge Learned Hand) at p. 241:

There can be no doubt that such a transaction results in a gain to someone, and § 22 (a), 26 U. S. C. A. Int. Rev. Code, § 22 (a), included "gains * * * of whatever kind." The notes by hypothesis were worthless when the executors got them; it was not a case of mistake as to their values; they were worth what the executors could have realized on them and that was nil. When they were paid in full, there was certainly a realized gain and not a mere increase in value. The general intent of the statute was to tax all realized gains and the only possible question is whether the language was so inept as to let such a case escape through its meshes. We can see no reason for so restricting its scope.

Petitioner sees the necessary exclusion from gross income provision in section 22 (b) (12) which deals with the exclusion allowed for the recovery of a bad debt. No authority is cited. The section has no application. Section 22 (b) (12) (A) defines the term bad debt as "a debt on account of worthlessness or partial worthlessness of which a deduction was allowed for a prior taxable year." Here it was stipulated Hans's debt was not deducted as a bad debt in any income tax return filed by decedent or his estate. Petitioner's contention, under this section, is really an argument that because the debt was never deducted as a bad debt in the income tax return of any taxpayer, any payment will be excluded from income. So it would if the payment had been made to Ernst while he was alive—not by virtue of section 22 (b) but because the payment would have been return of capital in which the party receiving the payment had a basis at the full amount of the debt. Taxability here is not based upon recovery of a bad debt, but receipt of payments exceeding the amount at which the debt was held by the estate.

There can be no question that the basis at which the estate held the debt was zero. Section 113 (a) (5) provides: "If the property was acquired * * * by the decedent's estate from the decedent, the basis

shall be the fair market value of such property at the time of such acquisition." Here it was stipulated that the fair market value of the debt at the date of decedent's death, which was the date of its acquisition by the estate, was zero.

Section 111 provides that the gain "from the sale or other disposition of property" shall be the excess of the amount realized therefrom over the adjusted basis which we have seen here is zero. The receipt of payment by an estate of an amount due the estate is a "disposition" and to the extent the amount realized exceeds the basis at which the obligation is held by the estate, a taxable gain results. "We have no doubt that the payment here of the claim held by the estate was a 'disposition' of the claim within the meaning of § 111." *Herbert's Estate* v. *Commissioner*, *supra*, at 758.

The argument advanced by the petitioner that such income, if income at all, should be accorded capital gains treatment under the provisions of section 117 is without merit. Section 117 defines capital gain as gain from the *sale or exchange* of capital assets. Here, we have no such sale or exchange. The petitioner contends that a sale or exchange is not a necessary element to the taking of a capital gain but cites no authority for the proposition. We think that there is adequate authority for the respondent's contention to the contrary. The question presented in *Lee* v. *Commissioner*, 119 F. 2d 946, affirming 42 B. T. A. 920, was "whether the notes held by the petitioner were paid by, or on behalf of, the maker, so as to constitute ordinary income to the petitioner, or whether the payment was received by petitioner as a result of a sale or exchange of a capital asset within the meaning of Section 117 * * * ." In its opinion in holding that the payments constituted ordinary income, the court held, at p. 948:

It is well settled that where a note is paid by or on behalf of the maker in satisfaction of the maker's liability thereon, a sale or exchange of property, as those words are used in the pertinent provision of the Revenue Act, does not result. Hale v. Helvering, 66 App. D. C. 242, 85 F. 2d 819, 821; Bingham v. Commissioner, 2 Cir., 105 F. 2d 971, 972.

We have nothing more in the instant case than payment and settlement of a debt on behalf of a debtor, in satisfaction of his liability to the owners of the debt. See *Galvin Hudson*, 20 T. C. 734, affirmed per curiam 216 F. 2d 748, where the gain realized by the assignee of the judgment creditor from the settlement with the judgment debtor is held to be ordinary income and not the sale or exchange of a capital asset under section 117 (a).

Petitioner argues that if a sale or exchange is a necessary element to bring a taxpayer within the provisions of section 117, the instant case is distinguishable from the cases cited by the respondent and that such a sale or exchange existed in the instant case. The argument is

that the estate of Ernst gave up the debt in exchange for, not only the $18,000, but the relinquishment by the estate of Hans of its share of the very $18,000 it was paying the estate of Ernst. We do not see that the latter fact distinguishes the instant case from the statement of the law as set forth in the *Lee* case, *supra*. We see nothing more in the completed transaction than the liquidation of a debt between representatives of a creditor and debtor.

*Decision will be entered for the respondent.*