| JETERS, Judge.
In this succession dispute, we must determine the proper executor fee and attorney fees owed, under law, by a succession, when a joint executor renounces his share of the executor fee and serves as attorney to the succession.
Jacob Abdalla (Abdalla) died testate in Opelousas, St. Landry Parish, Louisiana, on March 30, 1995. He was survived by his wife, Mary Tujague Abdalla; two children, Beverly Abdalla Johnson and Mary Ann Abdalla; and one granddaughter, Charrisse Ingrid Kaplan (Ms. Kaplan). Under the terms of Abdalla’s last will and testament, his estate was to remain either under administration or in trust for five years from his death. The will provided for three co-executors and set their compensation as “provided by law.” Additionally, the will empowered the co-executors with the authority to select the attorney or attorneys for the estate.
According to the detailed descriptive list filed in his succession proceedings on April 30, 1996, Abdalla had substantial immovable property holdings at the time of his death but also had a substantial debt. The detailed descriptive list filed by Ronald M. Boudreaux (Boudreaux), Lawrence B. San-doz, Jr. (Sandoz), and John L. McKnight (McKnight), as co-executors of the succession, valued the gross community estate at $4,365,285.47 and listed $2,699,530.06 in debts, liabilities, and administrative expenses. Most of the gross value of the community was represented by ownership in immovable property.
The succession proceedings began on April 12, 1995, when Boudreaux, Sandoz, and McKnight filed a petition to probate Abdalla’s will and to be named as the testamentary executors. On the same day, the trial court probated the will and confirmed the three men as testamentary ex *364 ecutors; the St. Landry Parish Clerk of Court issued letters testamentary; and the three men each took their oath of office. | ¡¡.The professional law corporation of San-doz, Schiff, Keating & Watson of Opelou-sas, Louisiana, appeared as attorneys for the co-executors in the initial succession filings, and Lawrence B. Sandoz, III, signed the pleading on behalf of the law corporation. Sometime thereafter, San-doz, Schiff, Keating & Watson ceased to represent the co-executors, and the law firm of Sandoz & Sandoz began representing them. The principal partners in San-doz & Sandoz are Lawrence B. Sandoz, Jr., and Lawrence B. Sandoz, III. Lawrence B. Sandoz, Jr., has practiced law for over fifty years and had handled most of Abdalla’s legal affairs since 1948. As to the other co-executors, Boudreaux is President of Mid-South National Bank in Opel-ousas and had handled most of Abdalla’s financial affairs in the past. McKnight had been employed by Abdalla’s of Lafayette, Incorporated for some thirty-eight years and was familiar with Abdalla’s property holdings. Early on in the administration of the succession, the co-executors agreed that Sandoz should serve as the attorney for the estate, and that his office would be the central location for all business associated with the estate. San-doz agreed to this arrangement conditioned upon him not receiving any payment as co-executor.
According to Sandoz, when the three co-executors reviewed the status of the estate, they became aware that much of the immovable property was in a state of disrepair, that certain debts were delinquent, and that a large loan at the First National Bank of Lafayette, Louisiana, had been placed on a “watch list.” The three men decided to attempt to raise capital by selling some of the immovable property which was either not producing revenue or not necessary to the estate. Once they agreed upon this plan to administer the succession, the co-executors began filing pleadings with the trial court, seeking authority not only to sell property of the estate, but also |sto continue certain business enterprises, pay an interim allowance to the surviving spouse, pay the funeral expenses, and borrow money on behalf of the succession.
On November 2, 1995, the co-executors filed their first tableau of distribution wherein they requested authority from the trial court to pay $38,482.25 in succession debts, including $11,134.50 in attorney fees to Sandoz & Sandoz. No objections were filed, and the trial court issued a judgment on November 20, 1995, homologating the tableau of distribution and authorizing the co-executors to pay the listed debts.
After filing other requests for authority to sell property and perform specific acts on behalf of the succession, the co-executors filed a second tableau of distribution on November 12, 1996, wherein they sought authority to pay debts totaling $36,-817.28. Included within the lisffed debts was $22,220.00 to Sandoz & Sandoz as additional attorney fees. Ms. Kaplan filed an opposition to this tableau of distribution but not as to the proposed attorney fee payment. After reaching a compromise on the disputed payment, Ms. Kaplan and the co-executors presented an amended tableau of distribution to the trial court. On February 18,1997, the trial court rendered judgment homologating the amended tableau of distribution and authorizing the co-executors to pay the debts listed.
After filing more pleadings requesting authority to perform other acts for the succession, on January 23, 1998, the co-executors filed a third tableau of distribution which is the subject of this appeal. In that pleading, the co-executors listed $55,572.06 in debts to be paid, including $26,295.75 as additional attorney fees to Sandoz & Sandoz and $9,000.00 each to Boudreaux and McKnight as partial payment on their executor fees. Ms. Kaplan filed an opposition to these proposed Ldisbursements, asserting that the fees claimed by Sandoz & Sandoz “appear to be for items unrelated to the Succession, not *365 necessary, and that could be done by a non-attorney_” As to the payments to Boudreaux and McKnight, Ms. Kaplan asserted that those payments should not be made until after homologation of the final account and should take into consideration that which had been, or will be, paid to Sandoz as attorney fees. The trial court rejected Ms. Kaplan’s opposition, and she has appealed that judgment, raising three assignments of error. For the following reasons, we affirm the trial court’s judgment on these issues.
In her first assignment of error, Ms. Kaplan asserts that the co-executors failed to establish a prima facie showing that they had complied with the notice requirements of La.Code Civ.P. art. 3804. As such, she argues that the trial court erred in rendering the judgment in favor of the co-executors. However, Ms. Kaplan did not raise this issue on the trial court level. Therefore, we will not consider this issue and reject this assignment of error. See Uniform Rules — Courts of Appeal, Rule 1-3.
In her second assignment of error, Ms. Kaplan asserts that the trial court erred in rendering a judgment that allowed the combination of attorney fees and the executor fee awarded to exceed the amount authorized by Abdalla’s will. While all the litigants agree that the proper minimum fee due the co-executors is $54,566.07, Ms. Kaplan argues that, because Sandoz is also acting as attorney for the succession, the combination of the executor fee due the co-executors and the attorney fees due Sandoz & Sandoz should not exceed the co-executor fee provided for by the will.
The will provides that “[m]y Executors shall be entitled to the compensation provided by law. Executors who choose to serve without compensation shall be | Rentitled to recover their expenses from my estate.” An executor is entitled to reasonable compensation for his services, and,
[i]n the absence of a provision in the testament ... the ... executor shall be allowed a sum equal to two and one-half percent of the amount of the inventory as compensation for his services in administering the succession. The court may increase the compensation upon a proper showing that the usual commission is inadequate.
La.Code Civ.P. art. 3351 (emphasis added).
Therefore, in this case, the minimum executor fee is two and one-half percent of the inventory [ ($4,365,285.47 h- 2) x 0.025] or $54,566.07.
Ms. Kaplan directs us to no law or jurisprudence that would classify attorney fees as part of an executor fee where an individual functions in both capacities. The work performed by an attorney on behalf of a succession requires specialized legal skills not required of executors. Additionally, Louisiana courts recognize the importance of a succession appointing an attorney to handle the legal matters of large successions, through work separate from that of an executor. See Succession of McLean, 26,566 (La.App. 2 Cir. 3/1/95); 651 So.2d 920. When an executor also acts as the attorney for the succession, he is not required to do the work of both an executor and an attorney while receiving compensation only for his work as executor. To require such would surely deter an executor from serving as attorney to the succession.
At the time Ms. Kaplan filed her opposition, Sandoz & Sandoz had been paid $33,354.50 in attorney fees and was requesting an additional payment of $26,295.75 for a total of $59,650.25. Bou-dreaux and McKnight had been paid nothing but were each requesting a payment of $9,000.00. Thus, the previously paid and requested payments of attorney and executor fees totaled $77,650.25, or $23,084.18 more than | ¿the statutory minimum executor fee. Ms. Kaplan also relies on the provisions of La.Code Civ.P. art. 3351.1 as authority for her argument that the trial *366 court erred in approving the attorney fees. That Article reads in pertinent part:
Unless expressly stated in the testament appointing the succession representative, if the succession representative serves as an attorney for the succession or for the succession representative, the succession representative shall not receive compensation both as a succession representative and as an attorney for the succession or for the succession representative; however, the compensation of a succession representative shall be reduced by the amount of compensation received and which was attributable to the performance of the duties as attorney for the succession or for the succession representatives.
La.Code Civ.P. art. 3351.1(B) (emphasis added).
According to Ms. Kaplan, reducing the executor fee by the amount of attorney fees paid to Sandoz will prevent the co-executors from receiving a “windfall.” We disagree.
By enacting La.Code Civ.P. art. 3351.1, the legislature clearly provided that executor fees and attorney fees are distinct, yet also recognized that a person can serve in the dual role of executor and attorney for the succession. Additionally, La.Code Civ.P. art. 3351.1(B) applies only when the executor claims both attorney fees and an executor fee. In the present case, Sandoz has renounced his portion of the executor fee, claiming only attorney fees on behalf of his firm. Thus, La.Code Civ.P. art. 3351(B) is inapplicable. In its reasons for judgment, the trial court correctly explained,
Article 3351.1(B) does not prohibit a named succession representative from acting as the attorney for the succession. It simply prohibits the representative/attorney from collecting a fee in both capacities. The article simply provides that if the representative/attorney collects a fee as attorney and seeks a fee as representative, the representative’s fee is reduced by the amount attributable to the performance of the duties as attorney for the succession. Mr. Sandoz is not seeking a fee as a co-executor. Thus, Mr. Sandoz’s assistance to the succession as a cojgxecutor7 has been a gratuity.
(Emphasis added).
Sandoz did not withdraw as co-executor, but, rather, waived any compensation due him in that capacity. Had the executors not chosen Sandoz to act as attorney for the succession, another attorney would have been chosen, similar attorney fees would have been imposed against the succession, and Sandoz would likely have not waived his portion of the executor fee. Additionally, Abdalla’s will provides that at all times during the administration of the succession, “[tjhere shall always be three Executors.” Had Sandoz withdrawn as co-executor, a replacement would have had to be named who would have benefitted from the waived portion of the executor compensation. Accordingly, we find no merit in this assignment of error.
Ms. Kaplan further argues that the effect of the trial court’s ruling is to allow Boudreaux and McKnight to divide the full minimum executor fee. We do not find that to be the case. The trial court clearly concluded that “Mr. Sandoz’s assistance to the succession as a co-executor has been a gratuity.” This is a factual finding in which we find no manifest error. The beneficiary of this gratuitous conduct is the succession, not the remaining co-executors. Therefore, implicit in the trial court’s judgment is that the proper minimum compensation due Boudreaux and McKnight is two-thirds of $54,566.07, not the entire amount. However, our conclusion in this respect does not preclude the trial court’s power to increase the compensation in the future “upon a proper showing that the usual commission is inadequate.” La.Code Civ.P. art. 3351.
In her last assignment of error, Ms. Kaplan asserts that the $59,650.25 attor *367 ney fee award to Sandoz & Sandoz is unreasonable. Specifically, she alleges that the |smatters of the succession do not involve “any complex legal issues or litigation” and that many of the items billed by Sandoz were not legal in nature. She asserts that the attorney fees should be edited to include only those services which are purely legal in nature.
We first note that, “[ajlthough parties are permitted to contract with respect to attorney fees, ... attorney fees are subject to review and control by the courts.” Leenerts Farms, Inc. v. Rogers, 421 So.2d 216, 218 (La.1982). Moreover,
the reasonableness of an attorney fee award is always subject to court scrutiny.... The succession representative who seeks court approval to pay such fees must, however, meet a threshold burden of establishing the basis and amount of the fees, just as she would be required to do to obtain court approval to pay other debts or charges of the succession.
McLean, 651 So.2d at 929.
At the hearing on the attorney fee question, all three co-executors testified. McKnight informed the trial court that his primary activity for the succession involved overseeing the commercial real estate. According to McKnight, much of the succession property was in need of extensive renovation. Responding to tenant problems and arranging repair work fell within his area of responsibility. However, that did not keep him from being involved in other succession activities including refinancing and sales matters. Boudreaux testified that he also was personally involved in the succession affairs, although not to the extent of the other two men. Both men confirmed the agreement with Sandoz for him to function as both attorney and co-executor for the succession. This agreement was reached because the three men felt that a central location would be of assistance in administering the numerous problems, that San-doz’s office was such a central location, and that Sandoz had special knowledge of Abdalla’s business and legal affairs. Both McKnight and |9Boudreaux were of the opinion that the arrangement was a benefit to the succession.
Sandoz has practiced law for over fifty years and handled several thousand successions. He disagrees with Ms. Kaplan’s contention that the succession did not involve “any complex legal issues or litigation.” According to Sandoz, he has never before handled a succession with so many problems. He testified that the most difficult problems involved a shopping center. At the time of Abdalla’s death, the shopping center was over twenty years old and in need of significant repair. It contained air condition units that were original to the initial construction, and the co-executors had spent $400,000.00 on the roof alone. Constant repair problems involving the rental properties required a continued quest for cash in which to respond to those problems.
Sandoz testified that the will itself had conditions that made administration complicated. He noted, as an example, the condition that the succession property remain under administration or in trust for five years from Abdalla’s death. According to Sandoz, Mary Tujague Abdalla’s will contains a similar provision. As a result, the co-executors were attempting to financially stabilize the entire former community estate through their actions to avoid repeating the expenses present in Abdal-la’s succession when his spouse dies.
In an effort to streamline the maintenance requirements of the succession property, the co-executors hired a property manager, Charlie McKinney, to maintain the properties. However, McKinney had little authority and merely responded to the instructions of the co-executors. Additionally, McKnight and Boudreaux testified that neither man kept time records concerning his succession activities. When questioned concerning dividing work that might be classified as legal work from that hnwhich might be classified as duties *368 of an executor, Sandoz responded as follows:
A. When I was hired, what I was told to do was to take care of everything that came into that office on behalf of the succession. Some of it is legal, some of it is not legal. But it has to be done for the efficient operation of the succession. So I do whatever I feel is necessary to see that the tenants are satisfied. If they’ve got a leak I call Mr. McKinney to get the roofer up there. If it’s an air conditioner, I call him to get the air conditioning.
Q. Y’all didn’t hire a property management firm to handle it?
A. No, because of the cost involved.
In support of the attorney fee request, Sandoz submitted an itemized statement describing the activities giving rise to the corresponding charges. Some of these activities do appear to bear more of a managerial than a legal connotation. However, we decline to define services for which an attorney fee is chargeable in a succession as only ‘those services which relate to drawing pleadings, preparing for court action, or appearing in court. An attorney’s services to any client include far more extensive activities. The trial court recognized this and ruled accordingly. We find no error in the trial court’s determination that the requested attorney fees are both earned and reasonable. Therefore, we find no merit in Ms. Kaplan’s third assignment of error.
DISPOSITION
For the foregoing reasons, we affirm the trial court’s judgment in all respects. All costs of this appeal are taxed against Charrisse Ingrid Kaplan.
AFFIRMED.
COOKS, J., dissents.
PICKETT, J., dissents.