SUCCESSION OF Betty Felix HELIS, by Esther Helis HENRY and David A. Kerstein, Testamentary Co–Executors, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 97–190T.

United States Court of Federal Claims.

June 25, 2002.

Jasper G. Taylor, III, Fulbright & Jaworski, L.L.P., Houston, Texas, for plaintiff.

Jennifer Dover Spriggs, U.S. Department of Justice, Tax Section, Washington, D.C., with whom on briefs were Eileen J. O'Connor, Assistant Attorney General, Mildred L. Seidman, Chief, Court of Federal Claims Section, and David Gustofson, Assistant Chief.

## OPINION

BRUGGINK, Judge.

This is an action for refund of estate taxes. The primary issue is one of valuation of an oil and gas partnership owned in part by the estate. That question was addressed by trial in June 2001, in Houston, Texas, after which the court ruled that the plaintiff had the better of the argument—the government had overstated the value of the partnership and hence, the estate. *See Succession of Betty Felix Helis v. United States*, No. 97–190T, 2001 WL 871301 (July 3, 2001). The parties were directed to attempt to resolve remaining issues, which primarily involved the deductibility of items of estate administration expense. Unable to do so, the matter is now pending on the parties' cross-motions for summary judgment. Oral argument was held June 14, 2002. At oral argument the court, without objection, took testimony from two witnesses pursuant to RCFC 43(e).

## BACKGROUND

Plaintiff is a Louisiana succession for Betty Felix Helis, deceased. When the decedent died on April 12, 1980, she was a resident of New Orleans, Louisiana. The case is brought by Esther Helis Henry and David A. Kerstein, Testamentary Co–Executors.

Betty Felix Helis was the wife of William G. Helis, Sr. Mr. Helis predeceased Mrs. Helis, leaving her a fifty-percent interest in his estate. Her succession is still pending in Civil District Court, Parish of Orleans, Louisiana. William G. Helis, Jr. was the original duly appointed and acting Testamentary Executor of the succession, but he died on August 5, 1988 and was replaced by Ms. Henry and Mr. Kerstein. Plaintiff timely filed the estate tax return on July 10, 1981.

The decedent owned, among other things, a fifty-percent interest in a partnership named "Estate of William G. Helis," which qualified as a closely held business under 26 U.S.C. (hereafter, "I.R.C.") § 6166 (1994). On July 10, 1981, plaintiff filed its Form 4768 "U.S. Estate Tax Return" which reported that the average appraised value of the partnership interest was $35,900,000 at date of death. After an Internal Revenue Service ("IRS") audit, it determined that the value of the partnership interest was $44,500,000.[1] The assessed taxes were increased, accordingly. In July 2001, we determined that the fair market value of the partnership interest as of the date of death was $35,900,000.

Plaintiff paid the disputed estate tax in the amount of $19,430,645.88 and interest in the amount of $16,690,452.11. Plaintiff chose to defer payment on the estate tax over the period allowed by I.R.C. § 6166 to closely held businesses, thereby incurring an interest obligation. *See* I.R.C. § 6166.

Although the ultimate issues here are ones requiring the application of federal tax law, Louisiana law controls much of the outcome. This is the case because the I.R.C. provides the following:

> (a) General Rule.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—
>
>> (1) for funeral expenses,
>>
>> (2) for administration expenses,
>>
>> (3) for claims against the estate, and
>>
>> (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,
>
> as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

I.R.C. § 2053. Accordingly, certain key components of Louisiana law are set out below.

> A succession representative may pay an estate debt only with the authorization of the court, except as provided by Articles 3224 and 3302.

LA.CODE CIV.PROC.ANN. art. 3301 (West Supp.2002).

> A. When a succession representative desires to pay estate debts, he shall file a petition for authority and shall include in or annex to the petition a tableau of distribution[2] listing those estate debts to be paid. A court order shall not be required for the publication of the notice of filing of a tableau of distribution.

LA.CODE CIV.PROC.ANN. art. 3303 (West Supp. 2002).

> A. An opposition may be filed at any time before homologation,[3] and shall be tried as a summary proceeding. If no opposition has been filed, the succession representative may have the tableau of distribution homologated and the court may grant the authority requested at any time after the expiration of seven days from the date of publication or from the date the notice required by Article 3306 is mailed, whichever is later.

LA.CODE CIV.PROC.ANN. art. 3307 (West Supp. 2002).

Decedent's will states that the executor or executors "shall be entitled to such compensation as may be fixed by law ..." The executor fees claimed and previously approved by the probate court total $1,764,117.56.

As of March 29, 2002, the succession incurred legal fees and expenses in the amount of $2,781,081.47 and accounting fees and expenses in the amount of $742,379.81. Appraisal and other fees and expenses in the amount of $544,328.35 were also incurred in preserving and distributing the estate. All of these fees and expenses were initially paid by the Estate of William G. Helis, A Partner-

---

1. The IRS concluded that the value of the taxable estate was $46,927,582.93 and the gross estate $58,171,762.01.

2. A list of payments to or charges by creditors.

3. Approval given by the probate court.

ship. The probate court approved each tableau related to these fees and allowed the succession to reimburse the partnership. David Kerstein, co-executor, and Michael Schott, Chief Financial Officer of Estate of William G. Helis, A Partnership, testified at oral argument that these fees and expenses paid by the partnership later were reimbursed in full by plaintiff.[4]

## DISCUSSION

The government agrees that, assuming the correctness of the court's ruling with respect to valuation of the partnership interest, the plaintiff is entitled to some refund of the overpayments made to the IRS, the underpayment interest with regard to these overpayments, and overpayment interest. The decedent's taxable estate must be determined, however, before the refund can be calculated.

Deductions from the gross estate for administration expenses are proper if allowable under the laws of Louisiana. *See* I.R.C. § 2503. The relevant regulation states:

(a) *In general.* The amounts deductible from a decedent's gross estate as "administration expenses" . . . are limited to such expenses as are actually and necessarily, incurred in the administration of the decedent's estate.

. . . .

(d) *Miscellaneous administration expenses.* (1) Miscellaneous administration expenses include such expenses as court costs, surrogates' fees, accountants' fees, appraisers' fees, clerk hire, etc. Expenses necessarily incurred in preserving and distributing the estate are deductible, . . . .

Treas.Reg. § 20.2053–3 (1979). Plaintiff seeks to deduct from the taxable estate excess interest, attorneys' fees, executor fees, and overhead expenses of the succession.

*Interest*

■ The estate claimed as an expense the amounts paid to the IRS as interest. Defendant argues that the overpayment of interest

may not properly be deducted from the estate because improperly paid interest will be returned to the estate upon payment of final judgment. It contends that the amount ultimately passing to the heirs will thus not be reduced. The interest will therefore not have been actually and necessarily incurred in the administration of the decedent's estate.

Defendant relies primarily on *Estate of O'Daniel v. United States,* 6 F.3d 321 (5th Cir.1993), in which a taxpayer was assessed an additional estate tax and deficiency interest by the IRS. The estate later received a refund of a portion of the additional tax as well as the corresponding deficiency interest. *O'Daniel,* 6 F.3d at 329. The court held that the deficiency interest was not an expense "actually" incurred and thus the estate could not deduct the refunded deficiency interest. *Id.* It is not clear from *O'Daniel* whether the refund had already been reimbursed fully to the plaintiff, but it is clear that the court had already awarded a specific amount in estate tax refund, deficiency interest refund, and statutory interest. It is also clear that, unlike the present case, the question involved the deductibility of "deficiency interest" pursuant to I.R.C. § 6601 instead of statutory interest under the I.R.C. § 6166 election.

To the extent that *O'Daniel* stands for the proposition that any future recovery of statutory interest must be taken into account in calculating deductions from the estate, which is not at all clear, we respectfully decline to follow it.

Plaintiff's interest in Estate of William G. Helis, A Partnership, qualified as a closely held business under I.R.C. § 6166. This enabled plaintiff to pay the estate tax due on the partnership interest in installments for fifteen years. Each installment included tax and interest. Plaintiff had the choice of either taking an estate tax deduction or an income tax deduction for the interest payments. *See* Rev.Rul. 79–252, 1979–2 C.B. 333, 1979 WL 51157 (1979) (allowing postdeath interest on an income deficiency to be deducted from an estate as an administration

---

4. We reject defendant's argument that this process of, payment by the partnership, reimbursement by the succession, is in any way improper. It was approved in principle by the probate court

and Messrs. Kerstein and Schott confirm that the expenses were actually absorbed by the succession.

expense). Plaintiff chose to take the deduction on its estate tax return.[5]

The estate tax assessed will be calculated as of the date of ultimate judgment, because at that time all administrative deduction issues will be resolved. But defendant proposes that after the estate's net value is determined, the amount of interest refunded to the estate should then be folded back into the estate, increasing net value. Once the estate is increased, the tax on it would also be increased, thus decreasing the amount of overpayment and associated interest overpayment, thus triggering a recalculation of the size of the estate, thus.... The process would theoretically never end. It would be comparable to closing a door half the distance repeatedly. The door never closes. Similarly here, there would be no way to determine the exact size of the estate or refund.

In any event, the court orders the refund as of the day of judgment. As of that date, the interest is still outstanding. By law, plaintiff can claim the interest as an estate tax deduction. Plaintiff's methodology—which would require it to recognize the refunded interest as income in a later year—is both legally correct and not encumbered by imprecision.

*Executor Fees*

■ The decedent's will[6] left the compensation of the executor to be set by Louisiana law which states:

> An executor shall be allowed as compensation for his services such reasonable amount as is provided in the testament in which he is appointed.
>
> ....
>
> In the absence of a provision in the testament or an agreement between the parties, the administrator or executor shall be allowed a sum equal to two and one-half percent of the amount of the inventory as compensation for his services in administering the succession. The court may increase the compensation upon a proper

showing that the usual commission is inadequate.

> ....
>
> The compensation of a succession representative shall be due upon the homologation of his final account. The court may allow an administrator or executor an advance upon his compensation at any time during administration.

La.Code Civ.Proc.Ann. art. 3351 (West Supp. 2002). Executor fees totaled $1,764,117.56. Defendant points out that this is in excess of the two and one-half percent of the new value of the estate. Indeed, it is in excess of two and one-half percent of the IRS-calculated value. Defendant objects to the deduction of the executor fees because the fees paid exceed the amount presumptively allowed by Louisiana law.

Plaintiff relies on the fact that the executor fees were approved by the probate court. The additional fees were allowed because of the complexity and magnitude of the succession. The fees were also audited by the IRS and not objected to in the year they were proposed or in the closing letter issued in 1997. In any event, this court has no basis for disturbing the probate court's decision regarding executor fees. The probate court is in a superior position to determine the reasonableness and necessity of an increase in fees in this succession, particularly as it has overseen the succession for more than twenty years, during which time there has been an audit, an I.R.C. § 6166 payment election for fifteen years, and a trial.

*Attorneys' fees*

■ Defendant objects to the amount claimed as attorneys' fees. Although these fees have been homologated by the Louisiana probate court, defendant questions whether they were all "necessarily incurred." Defendant also challenges the reasonableness of the fees and argues that the burden of proving the correctness of challenged items on a tax return leading to a refund is on the taxpayer. *See United States v. Janis,* 428

---

5. Under 26 U.S.C. § 642(g), this had the effect of precluding the estate from deducting any item for income tax purposes.

6. Mrs. Helis's will does not establish a maximum fee to be paid to the executors, but provides that the executors "shall be entitled to such compensation as may be fixed by law ..."

U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). It points out that not all of the billings contain hourly rates and descriptions of the work.

Plaintiff agrees that ultimately the burden is on the taxpayer to prove reasonableness but that the approval of the fees by the Louisiana probate court constitutes prima facie proof. We agree. The Court of Claims in *Missouri Pacific Railroad Co. v. United States,* 168 Ct.Cl. 86, 338 F.2d 668, 670 (1964), held that the government must show a reasonable basis for challenging the items before the taxpayer can be required to proceed with the burden of proving the correctness of each item. The court stated:

> the government has to demonstrate that it has some concrete and positive evidence, as opposed to a mere theoretical argument, that there is some substance to its claim and is not a mere fishing expedition or a method of discouraging taxpayers from seeking refunds on meritorious claims because of the costs that would result in proving each and every item involved in the tax return.

*Id.*

The probate court's allowance of payment of the attorneys' fees is presumptive evidence that the attorneys' fees were reasonable and actually incurred. What we have, moreover, in addition to the probate court's rulings, are the invoices submitted to the succession by the attorneys. The court has been shown no Louisiana prohibition on lump-sum billing.

In any event, because of defendant's questions about the support for undifferentiated fees, the court heard the testimony of Mr. Kerstein, primary attorney for the succession's affairs. He explained that the succession's attorneys' fees initially were estimated to be approximately $600,000. In light of the extended period of time it has taken to probate the estate, attorneys' fees were increased.

Defendant has offered no evidence to support its challenges, nor has it stated that any would be offered in the event of trial. In the absence of any specific challenge to the reasonableness of specific charges, we are satisfied that the charges meet the statutory requirements. Ruling to the contrary would mean that this court, for no clear reason, would duplicate the work of the Louisiana probate court. The court is satisfied that amounts billed were reasonable and necessary.

Defendant also objects to the deduction of some of the amounts paid Mr. Kerstein as attorney fees because he served both as executor and as the succession's attorney. The Louisiana code provides that "if the succession representative serves as an attorney for the succession ..., the succession representative shall not receive compensation both as a succession representative and as an attorney for the succession ..." *Id.* at art. 3351.1. In *In re Succession of Abdalla,* 764 So.2d 362 (2000), the Louisiana Third Circuit Court of Appeal held that this article "only applies when the executor claims *both* attorney fees *and* an executor fee." *Id.* at 366. It does not prohibit "a named succession representative from acting as the attorney for the succession. It simply prohibits the representative/attorney from collecting a fee in both capacities." *Id.* Mr. Kerstein testified at oral argument that he has not and will not receive any compensation as executor. Defendant has offered no evidence to the contrary. His compensation as the succession's attorney is thus fully deductible.

*Miscellaneous Expenses*

█ Defendant also asserts that plaintiff is not entitled to deduct certain miscellaneous expenditures for the estate. These expenditures are accounting fees, appraisal fees, and "overhead" that were homologated by the Louisiana probate court. The accounting fees and appraisal fees are contemplated by the Treasury Regulations as the type of expenditures that fall into the "miscellaneous administration expenses" category. Treas. Reg. § 20.2053–3. Defendant's complaint, once again, is that the invoices do not include the number of hours worked, the hourly rate charged, or by whom the work was done. Plaintiff argues that they are proper under the laws of Louisiana and under I.R.C. § 2053. As stated above, detail as to time spent and amount charged are not necessary and the lack of this information on the in-

voices does not make the expenditures unreasonable.

The "overhead" deductions sought by plaintiff are charges against the Estate of William Helis, A Partnership for the staff and administrative services that it provided for over twenty years. Defendant complains that the government did not have enough information to determine how the partners allocated overhead. The affidavits of David Kerstein and Michael Schott explain that the partnership does not normally allocate overhead to each partner, although the special circumstances created by the death of Mrs. Helis required that the partnership provide extraordinary services for the estate of the decedent partner. As Mr. Kerstein explained during the hearing, the partnership incurred substantial costs that were necessary solely to provide accounting, tax, and managerial supervision for the administration of the substantial and complex succession. This overhead was allowed by the Louisiana probate court, and we have no basis for questioning it.

*The Mailbox Rule*

The final unresolved issue between the two parties concerns the date that should be used to determine when payments were made to the IRS, thus setting the date from which interest on the overpayment begins to run. Plaintiff contends that I.R.C. § 7502 fixes the date of mailing as the date of payment. The statute reads:

(a) General Rule—

(1) Date of Delivery.—If any return, claim, statement, other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue law is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return claim, statement, or other document is required to be filed, or to which such payment is required to be made, the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.

26 U.S.C. § 7502 (1994). During oral argument the parties expressed their prior agreement that January 12 of each year should be used to determine the date of payment with two exceptions: January 8, 1987 and January 13, 1992. Plaintiff later conceded, however, that interest should begin on January 12, 1987 instead of the January 8, 1987 mailing date. Defendant agreed that because January 12, 1992 was a Sunday, the payment was due on January 13, 1992. We accept these dates.

CONCLUSION

We grant plaintiff's motion for summary judgment and deny defendant's motion as set out above. The parties are directed to confer to attempt to reach agreement on the correct tax refund calculation. A status conference will be held on July 22, 2002 to assess progress toward an agreed calculation.