SUCCESSION OF Betty Felix HELIS, by Esther Helis HENRY and David A. Kerstein, Testamentary Co–Executors, Plaintiffs,

v.

The **UNITED STATES**, Defendant.

No. 97–190T.

United States Court of Federal Claims.

Jan. 8, 2003.

Jasper G. Taylor III, Fulbright & Jaworski L.L.P., Houston, Texas for plaintiff.

Mildred L. Seidman, Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, for defendant. With her on the briefs were Eileen J. O'Connor, Assistant Attorney General, David Gustafson, Assistant Chief, and Jennifer Dover Spriggs, of counsel.

## ORDER ON RECONSIDERATION

BRUGGINK, Judge.

This is an action for refund of estate taxes. Trial ended in a ruling favorable to plaintiff on the underlying asset valuation question. Thereafter, on June 25, 2002, the court resolved a series of collateral issues, including whether the size of the taxable estate, which reflects an administrative deduction for interest paid to the government, must be recalculated in light of the knowledge that the final judgment will order repayment of some of that interest. The court initially agreed with plaintiff. The outcome made a difference of over $26 million in the refund amount. We granted defendant's motion for reconsideration. After extensive briefing, we conclude that the government has the better of the argument.

## PROCEDURAL BACKGROUND

The decedent owned, among other things, a fifty-percent interest in a partnership named "Estate of William G. Helis," which qualified as a closely held business under 26 U.S.C. (hereinafter, "I.R.C.") § 6166 (1994). Plaintiff filed its Form 706 "U.S. Estate Tax Return" which reported that the value of the partnership interest was $35.9 million at date of death. After an Internal Revenue Service ("Service") audit, the Service determined that the value of the partnership interest was $44.5 million. The assessed taxes were increased accordingly. Plaintiff paid the disputed estate tax in the amount of $19.4 million. It did so over a fifteen year period, as it had the right to do under I.R.C. § 6166. Plaintiff thereby incurred an interest obligation in the amount of $16.7 million.[1]

After trial in June 2001, the court ruled that the plaintiff was correct with respect to the primary factual question, namely, that the value of the oil and gas partnership interest constituting the principal asset of the estate was, as plaintiff contended, $35.9 million. *See Succession of Helis v. United States,* 88 A.F.T.R.2d (RIA) 5199, 2001 WL 871301 (Fed.Cl. July 3, 2001). The parties were directed to attempt to resolve remaining issues, which primarily involved the deductibility of items of estate administration expense. Unable to do so, the court then resolved a number of collateral issues on June 25, 2002. *Succession of Helis v. United States,* 52 Fed.Cl. 745 (2002). One of these had to do with the calculation of deductions for interest paid to the IRS arising out of deferred payment of a portion of the assumed tax liability. The court accepted plaintiff's position that the size of the estate could reflect interest paid and unrecovered prior to the judgment. This had the effect of reducing the size of the estate by over $6 million and, thus, the ultimate tax liability.

The parties have stipulated that, as of July 31, 2002, under plaintiff's calculation, the amount of the refund should be $46.9 million, whereas under defendant's calculation, the refund should be $20.3 million.[2] Because of the importance of the question, and because it was not thoroughly briefed in earlier proceedings, the court granted defendant's request that this issue be reopened. In addition, plaintiff seeks correction of three minor errors in the previous opinion, which defendant does not oppose.

---

1. Tax is completely deferred for the first five years. Only interest is due. Thereafter, a ten year repayment schedule may be used, as plaintiff did here.

2. These amounts must be readjusted in light of subsequent administrative expenses.

## DISCUSSION

Plaintiff's interest in Estate of William G. Helis, A Partnership, qualified as a closely held business under I.R.C. § 6166. This enabled plaintiff to pay the estate tax assessed on the partnership interest in installments over fifteen years. The interest that is due the United States for allowing these deferred payments under § 6166 is distinct from, although similar to, interest assessed under § 6601 on "underpayment, nonpayment, or extensions of time for payment, of tax."

Plaintiff had the choice of either taking an estate tax deduction or an income tax deduction for the interest payments. *See* I.R.C. § 642(g); Rev. Rul. 79–252, 1979–2 C.B. 333, 1979 WL 51157 (1979) (allowing post-death interest on an income deficiency to be deducted from an estate as an administration expense). Pursuant to I.R.C. § 2053, plaintiff was allowed to deduct administrative expenses from the value of the estate. We held earlier that, under applicable Louisiana law, this includes interest necessarily incurred in the administration of the estate. *Helis*, 52 Fed.Cl. at 748–49. Plaintiff chose to take the interest deduction on its estate tax return as an administrative expense.[3]

Defendant does not dispute that interest on borrowing can be a proper administrative expense under I.R.C. § 2053. Instead, defendant disputes whether all of the interest was "actually and necessarily incurred" as required under Treas. Reg. § 20.2053–3(a) (1979). Defendant contends that the unnecessarily paid § 6166 interest will be returned, plus interest, thereby eliminating the deduction in the same amount.

**3.** Under I.R.C. § 642(g), this had the effect of precluding the estate from deducting the same items for income tax purposes.

**4.** In *Bush,* the decedent directed payment of the residual estate to charity. The gift to charity constituted a deduction under § 2055, thus affecting the size of the residual estate and hence the amount of tax due. Plaintiff urged that the deduction be based on an assumption that the initial, pre-tax amount theoretically left as the residual estate be deemed the correct charitable deduction. Applying that entire amount as a deduction created the largest tax-reducing impact. After that calculation, whatever was left would be deemed the actual residual estate to be paid to the charity. The IRS offered alternative calculations employing algebraic formulae capa-

In its earlier decision on this question, the court ruled against the government on two grounds. The first was that there appeared to be no legal reason not to treat the interest payments as anything other than final at the time they were made. In other words, there was no dispute that plaintiff made a series of interest payments over the course of fifteen years. At the time made, plaintiff was entitled to treat each one as a deduction. The deduction, although cumulative, was applied, *nunc pro tunc,* back to the estate as of the date of valuation, July 10, 1981.

The second reason we agreed with plaintiff previously was that, because defendant's model requires a theoretically infinite series of iterative calculations based on two mutually dependent variables (the size of the estate and the amount of the tax), the court assumed the calculation would not be precise. The amount of the tax depends on the size of the taxable estate, which depends on the amount of the deductions, which in turn depends on the amount borrowed to pay tax, ad infinitum.

We deal with the latter rationale first. It was incorrect. Defendant asserts, and plaintiff does not contest, that algebraic models are available which can manipulate two mutually dependent variables. It is thus possible to calculate and adjust simultaneously the precise amount of borrowing, deduction, and tax due in a way that minimizes the borrowing and maximizes the tax return. Our predecessor court employed such a calculation in *Estate of Bush v. United States,* 223 Ct.Cl. 161, 618 F.2d 741 (1980).[4]

ble of handling two dependent variables to determine the precise amount of deduction which would generate the appropriate tax.

The court in *Bush* adopted the IRS approach. It pointed out that there was an obvious disconnect between the nominal charitable donation and the actual donation. The two figures were different. It also noted that Congress was aware of this phenomenon and previously had amended § 2055 to make it clear in legislative history that it wished the net amount going to the charity to be the figure used for the deduction. *Bush,* 223 Ct.Cl. at 168–69, 618 F.2d 741.

Defendant's characterization of *Bush* as controlling authority is technically correct. All opinions of the Court of Claims are controlling authority in this court. It is not directly on point,

The first rationale is significantly more problematic, but, ultimately, also flawed. No cited case is directly on point, although the parties argue from a number of related decisions. Some of the decisions upon which plaintiff relies are relevant only on the question of whether borrowing to pay taxes, when precipitated by a desire to protect non-liquid assets, means that the expense was "necessary" within the meaning of the regulation. In *Estate of Huntington v. Comm'r*, 36 B.T.A. 698, 721–26, 1937 WL 404 (1937), for example, the estate had filed its estate tax return in 1928. Within the month prior to filing the return, the estate issued and sold notes of the estate to raise $9.5 million for estimated estate taxes and other expenses of the estate. The estate then deducted on its estate tax return amounts for the initial discount on the notes, the interest paid in conjunction with the notes from 1929–1931, the issuance expenses, and the expenses incident to retiring the notes. The government disputed the deduction.

The Tax Court in *Huntington* allowed the deductions as necessary, despite the fact that the estate disputed the amount of the tax. The issuance of notes was necessary because it "avoided the necessity of sacrificing the assets of the estate by immediate or forced sale." *Id.* at 726. The court in *Huntington* had the luxury of hindsight over the entire transaction, since the opinion was filed in 1937, and the notes were redeemed in 1931. The court, therefore, knew the total amount of borrowed funds, the total borrowing costs, and it finalized the amount of the litigated estate tax. The funds borrowed in *Huntington* were used to pay more than just estate tax. In addition, the Service did not argue that the amount borrowed was excessive in light of the tax still due. Unlike the present case, in other words, the deduction does not appear to be a function of interest unnecessarily incurred.

The court in *Estate of Graegin v. Comm'r*, 56 T.C.M. (CCH) 387, 1988 WL 98850 (1988), makes a similar point. There, the estate borrowed money from a third party to pay estimated estate taxes, rather than sell stock owned by the estate. The estate deducted the entire estimated balloon interest payment on its return as an administrative expense. The government disallowed the deduction. The court, however, reinstated the deduction as "actually and necessarily incurred" under Treas. Reg. § 20.2053–3(a). "To avoid a forced sale of its assets, the estate had to borrow money to satisfy its Federal estate tax liability. Expenses incurred to prevent financial loss to an estate resulting from forced sales of its assets in order to pay estate taxes are deductible administration expenses." *Graegin*, 56 T.C.M. (CCH) 387 (citing *Estate of Todd v. Comm'r*, 57 T.C. 288, 1971 WL 2614 (1971); *Huntington*, 36 B.T.A. 698 (1937)).

The real issue in *Graegin*, since the interest was not yet fully due, was how likely it was that interest would actually be paid, because the note was to an "insider." The Tax Court chose not to second guess the possibility that the interest would not be paid and allowed the complete deduction. Neither *Graegin* nor *Huntington* deal with interest recouped after having been paid. The court finds *Todd*, 57 T.C. 288, similarly inapplicable to the instant case.

A number of decisions and revenue rulings relied on by plaintiff deal with whether to treat certain gains to the estate as income. *See Waldrop v. United States*, 133 Ct.Cl. 902, 137 F.Supp. 753 (1956); *Bowes v. United States*, 593 F.2d 272 (7th Cir.1979); *Connecticut Bank and Trust Co. v. United States*, 465 F.2d 760 (2d Cir.1972); *Bankhead v. Comm'r*, 60 T.C. 535, 1973 WL 2560 (1973); *Zobel v. Comm'r*, 28 T.C. 885, 1957 WL 1109 (1957); Rev. Rul. 92–91, 1992–2 C.B. 49, 1992 WL 297210 (1992); Rev. Rul. 81–154, 1981–1 C.B. 470, 1981 WL 167760 (1981); Rev. Rul. 79–252, 1979–2 C.B. 333 (1979); Rev. Rul. 73–579, 1973–2 C.B. 46, 1973 WL 33082 (1973). Plaintiff relies on such authority to support the argument that the portion of a subsequent judgment which consists of returned interest can be accounted for later as

however. The two factors cited in *Bush* are not present here. In our case, plaintiff in fact paid the interest claimed, and there is no suggestion that Congress had a similar concern in drafting § 2053. In our view, *Bush* merely supports the proposition that algebraic formulae can be used in precisely calculating tax in the event the deduction and the tax are interrelated.

income, and taxed accordingly, unlike the present case.

Two of these revenue rulings, Rev. Rul. 92–91 and Rev. Rul. 73–579, involve the question of whether to treat certain unexpected gains as income to the taxpayer in circumstances in which an initial deduction was taken on the taxpayer's income tax return. The other two revenue rulings, Rev. Rul. 81–154 and Rev. Rul. 79–252, merely confirm the deductibility of interest. *Connecticut Bank and Trust* involved the unique question of whether proceeds of a wrongful death action were assets owned at the time of death. *Bankhead* involved cancellation of a debt after death. The cancellation was both post-death and by operation of law. The court held that the gain was income to the estate. *Zobel* is similar. There, a debt was given a zero value at the time of valuation of the estate. The court did not question that characterization. Later, the debtor made payments on the debt. These post-death payments were treated as income by the court. In *Waldrop*, the estate sought to treat post-death earnings as part of the estate as a way of increasing a residuary gift to charity. Such treatment would have simultaneously created a charitable deduction. The court rejected that analysis, treating the earnings as subject to income rather than estate tax. None of these cases are controlling, however, and we are reluctant to view them even as helpful. They do not directly address the relevant question, which concerns the correct estate tax calculation.

Defendant relies primarily on *Estate of O'Daniel v. United States*, 6 F.3d 321 (5th Cir.1993), which admittedly is closer to the mark. In *O'Daniel*, a taxpayer was assessed an additional estate tax and deficiency interest by the IRS. The estate later received a refund of a portion of the additional tax as well as the corresponding deficiency interest. The court held that the deficiency interest later returned was not an expense "actually" incurred. Thus the estate could not deduct the refunded deficiency interest. The expense was refunded directly and never diminished the value of the estate. Instead, the amount ultimately passing to the heirs was not reduced.

The facts in *O'Daniel* are somewhat distinct from those in the case at bar. In *O'Daniel*, the Service had apparently refunded the deficiency interest by the time the court ruled. The following comment we find to be relevant, however: "[A] deduction from the estate tax does not hinge upon the concept of the tax year. Therefore, the refunded deficiency interest should be netted against the original interest payment, resulting in an estate tax deduction of zero." *O'Daniel*, 6 F.3d at 329.

Ultimately, we think defendant's approach is more consistent with the way in which estate tax is determined. Unlike income tax, which builds on the concept of independent tax years, each becoming a virtually sealed compartment, estate tax is structured around a single event. The estate is created at death, but it can be affected by events in succeeding calendar years. Determination of the final amount of the taxable estate is therefore an open-ended process which may take years to finalize.

To apply that consideration here dictates an acknowledgment that, as part of the judgment, plaintiff is going to receive a return of interest because, in retrospect, it need not have been borrowed. Unlike the compartmentalized character of the income tax year, no curtain is drawn down on the estate tax calculation. *Cf. Hillsboro Nat'l Bank v. Comm'r*, 460 U.S. 370, 377–80, 103 S.Ct. 1134, 75 L.Ed.2d 130 (1983) (discussing the income tax benefit rule and the implications of a deduction taken and the corresponding return of capital in the same tax year). So long as the recovery or gain, in this case the cancellation of interest, is more properly attributable to the creation of the estate, as opposed to subsequent income of the estate, it is appropriate to fold the recovery into the estate tax calculation. That is particularly so when the estate elected to take the deduction under estate rather than income tax laws.

As in *O'Daniel*, the estate ultimately will not "actually" have incurred the disputed interest expense. The estate is still open, and it will continue to be open after entry of judgment. Prior to closing, the estate will have received the amount ordered by way of judgment. Prior to a final reconciliation, in

other words, plaintiff will have recovered the interest overpayment, along with statutory interest on that overpayment. The economic reality to the estate is that it will not be diminished beyond what it would have consisted of in the event plaintiff's figure had been used from the beginning.

As defendant correctly observes: "the interest due and owing to the Government depends on the tax liability, while the amount of the tax liability depends on the interest deduction." Motion of October 25, 2002, p. 15. What is now known is that the amount of interest paid was not the amount due. This is not because of the open-ended effect of an increasing interest deduction on the size of the estate, but because a major adjustment must be made for the over-valuation of the oil and gas partnership interest. In short, more than one third of the interest paid was unnecessarily incurred ($16,690,452 paid; $10,080,713 due under defendant's model), and, after final judgment, will not in fact have been paid.[5]

Plaintiff argues that such treatment creates an imbalance. It argues that if the estate had borrowed money from a third party lender instead of the government, it would be entitled to deduct all interest paid on the loan, irrespective of whether it eventually received a refund of overpaid tax and statutory interest. Plaintiff suggests that the estate's use of I.R.C. § 6166, which was intended to assist taxpayers by allowing the government to function as a lender, should produce the same result. In that case, however, the estate would not recover interest paid to the third party lender. Therefore, the expenses would be "actually and necessarily incurred" and fully deductible under § 2053.

We acknowledge that the precise economic consequences of borrowing from a third party lender might be different.[6] We note, however, that, as defendant argues, plaintiff's preferred approach would create its own inconsistency between treatment of refund claims versus deficiency claims. In the case of deficiency claims brought in the Tax Court, the taxpayer, of necessity, eventually pays only the net tax due. The government, in effect, becomes a lender to the extent of the estate tax liability. The interest on that unpaid tax, likewise, is of necessity the precise amount due.[7] Such treatment is comparable to defendant's proposed treatment of the refund claim here.

CONCLUSION

The court vacates that portion of the opinion of June 25, 2002 dealing with the deductibility of interest. In lieu thereof, it concludes that the taxable estate is to be determined on the understanding that only that interest not refunded as part of the judgment is deductible. In addition, the following corrections are made to the opinion, 52 Fed.Cl. 745:

● the reference to Form 4768 in the first paragraph of page 747 should be to form 706.

● the date in the last paragraph of page 747 should be January 31, 2002, and the second sentence in that paragraph describing appraisal fees should also include "and partnership overhead charged to the succession in the amount of $917,500.00 ...."

● the reference at page 748 to "excess interest" should be simply "interest."

The parties are directed to consult and attempt to reach agreement as to the correct amount of the judgment in light of the above ruling, and in light of additional administrative deductions accrued after August 31, 2002. A joint status report will be submitted

---

5. We also find unpersuasive plaintiff's argument that the amount of its preferred refund, over $46 million, can be roughly derived by adding twenty one years of statutory interest to the tax refund. This calculation assumes its conclusion by using as the principal amount of the refund the $6.2 million due under plaintiff's calculation. If the calculation begins with defendant's preferred amount of refund ($2.6 million), it results in approximately the amount of refund to which the government agrees.

6. The court is not aware of any decision involving analogous circumstances in which too much money was borrowed by the estate from a third party lender.

7. Cf. *Estate of Bailly v. Comm'r*, 81 T.C. 949, 1983 WL 14903 (1983) (allowing estate tax deductions for I.R.C. § 6166 interest under I.R.C. § 2053 only as that interest actually accrues).

on or before February 14, 2003 updating the stipulation of October 2, 2002 accordingly.